S09G1700. SMITH v. THE STATE.
(697 SE2d 177)

NAHMIAS, Justice.

Lawrence Rupert Smith filed a motion for out-of-time appeal of his 2003 plea of guilty but mentally ill to several child molestation offenses. Smith asserted that he is not a United States citizen, that

---

the trial court violated OCGA § 17-7-93 (c)[1] and Uniform Superior Court Rule (USCR) 33.8 (C) (2)[2] by failing to advise him on the record that his guilty plea may have an impact on his immigration status, and that his plea counsel was constitutionally ineffective in advising him that a guilty plea cannot be appealed. The trial court summarily denied the motion, and the Court of Appeals affirmed, holding that "the effect of a guilty plea on a resident alien's immigration status is a 'collateral consequence' of the plea, and a guilty plea will not be set aside because the defendant was not advised of such a possible collateral consequence." *Smith v. State*, 298 Ga. App. 458, 459 (680 SE2d 516) (2009). We granted Smith's pro se petition for a writ of certiorari[3] and directed the parties to brief the following question:

> Did the Court of Appeals err in holding that a plea court's failure to follow OCGA § 17-7-93 (c) would not require setting aside a guilty plea because the impact that the plea might have on a defendant's immigration status is merely a collateral consequence of the plea?

As discussed below, we conclude that the Court of Appeals did not err in holding that immigration consequences are "collateral consequences" of a guilty plea. However, that does not end our analysis, and it should not have ended that of the Court of Appeals. Under OCGA § 17-7-93 (c), USCR 33.8 (C) (2), and the United States Supreme Court's recent decision in *Padilla v. Kentucky*, 558 U. S. ___, ___ (130 SC 1473, 1486, 176 LE2d 284) (2010), defendants who are not advised by their counsel or the trial court of the impact that their guilty plea may have on their immigration status may, under some circumstances, be entitled to withdraw their guilty pleas.

---

[1] OCGA § 17-7-93 (c) provides as follows:
    In addition to any other inquiry by the court prior to acceptance of a plea of guilty, the court shall determine whether the defendant is freely entering the plea with an understanding that if he or she is not a citizen of the United States, then the plea may have an impact on his or her immigration status. This subsection shall apply with respect to acceptance of any plea of guilty to any state offense in any court of this state or any political subdivision of this state.

[2] USCR 33.8 (C) (2) provides as follows: "The judge should not accept a plea of guilty or nolo contendere from a defendant without first . . . [i]nforming the defendant on the record . . . that a plea of guilty may have an impact on his or her immigration status if the defendant is not a citizen of the United States." Identical rules have been adopted for other classes of court that handle criminal cases. See, e.g., Uniform Magistrate Court Rule 30.8 (C) (2).

[3] After the grant of certiorari, Professor Sarah L. Gerwig-Moore and law students from the Mercer Law School Habeas Project undertook pro bono appellate representation of Smith. The Court expresses its appreciation to counsel for their pro bono service.

In this case, although the State concedes that the trial court did not comply with OCGA § 17-7-93 (c) and USCR 33.8 (C) (2), Smith cannot, on the face of the current record, show harm, or "manifest injustice," as a result. Consequently, he is not entitled to a direct appeal, timely or out-of-time, and his plea counsel could not have been ineffective in failing to advise him to appeal. For relief Smith must turn to habeas corpus. In that context, he could not raise a claim based on violation of the statute or rule, but he may seek to raise the parallel ineffective assistance of counsel claim recognized in *Padilla*. We therefore affirm the judgment below, although on somewhat different grounds.

1. The record on appeal shows as follows. Smith is a native of Panama who has lived in the United States for a number of years. On November 20, 2001, a Richmond County grand jury indicted him on four counts of child molestation, four counts of enticing a child for indecent purposes, five counts of aggravated child molestation, and one count of incest. On April 25, 2003, after a series of delays to ensure that Smith was competent, he pled guilty but mentally ill to three counts of child molestation and two counts of aggravated child molestation, and the remaining nine counts against him were nolle prossed. At the plea hearing, the trial court ensured that Smith was advised of his *Boykin* rights, see *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969), but neither the hearing transcript nor the Acknowledgment and Waiver of Rights form that Smith signed references any immigration consequences of the plea. The trial court sentenced Smith to a total of 80 years, with 50 years to be served in confinement followed by 30 years on probation.

More than five years later, on October 10, 2008, Smith filed a pro se "Motion for Out-of-Time Appeal" and requested a hearing. In the motion, Smith alleged that his right to appeal his guilty plea was lost not through his own lack of diligence but rather due to his plea counsel's ineffectiveness. Smith asserted that on the date of his sentencing, he told his counsel that he wanted to appeal, but counsel said that he could not appeal a guilty plea. Smith contended that a timely appeal would have been successful, because the trial court violated OCGA § 17-7-93 (c) and USCR 33.8. The trial court summarily denied the motion, without a hearing, and Smith appealed.

The Court of Appeals affirmed, acknowledging the alleged violation of OCGA § 17-7-93 (c) but relying on its precedent holding that a guilty plea will not be set aside due to the failure to advise the defendant of potential immigration consequences, because such consequences are "collateral." *Smith*, 298 Ga. App. at 459 & n. 2 (citing *McLeod v. State*, 251 Ga. App. 371, 372 (554 SE2d 507) (2001)). We granted Smith's certiorari petition.

2. (a) As a matter of constitutional due process, before a defendant pleads guilty, the trial court must advise him of the "direct" consequences of entering the plea, but not of all the potential "collateral" consequences, in order for the guilty plea to be considered knowing and voluntary. See *Brady v. United States*, 397 U. S. 742, 755 (90 SC 1463, 25 LE2d 747) (1970) (holding that the standard for voluntariness of guilty pleas is that the plea be " 'entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel' " (citation omitted)); *Stinson v. State*, 286 Ga. 499, 500 (689 SE2d 323) (2010) (explaining that "the defendant's lack of knowledge of such collateral consequences does not affect the voluntariness of the plea").[4] Direct consequences may be described as those within the sentencing authority of the trial court, as opposed to the many other consequences to a defendant that may result from a criminal conviction. See *Padilla*, 558 U. S. at ___ (130 SC at 1481). See also *Brantley v. State*, 290 Ga. App. 764, 766 (660 SE2d 846) (2008) (describing collateral consequences as those that do not lengthen or alter the sentence pronounced by the trial court). Accordingly, neither this Court nor the U. S. Supreme Court has held that any action taken by persons or agencies other than the sentencing court constitutes a direct consequence of a guilty plea. See, e.g., *Williams v. Duffy*, 270 Ga. 580, 581 (513 SE2d 212) (1999) (holding that parole eligibility is a collateral consequence, because " 'eligibility or ineligibility for parole is not a "consequence" of a plea of guilty, but a "matter of legislative grace" or a "consequence of the withholding of legislative grace,' " which "in no way lengthen[s] the sentence itself" (citations omitted)); *Williams v. State*, 278 Ga. App. 42, 45 (628 SE2d 128) (2006) (holding that defendants need not be advised of the potential effect of a guilty plea on rights such as "the right to bear arms, obtain a professional license, or vote"); *Cornwell v. Kirwan*, 270 Ga. App. 147, 149-150 (606 SE2d 1) (2004) (effect of First Offender plea on defendant's license to trade securities is a collateral consequence); *Reed v. State*, 251 Ga. App. 606, 607 (554 SE2d 792) (2001) (eligibility to have a sentence reviewed by the Sentence Review Panel is a collateral consequence).

---

[4] In contrast to silence about collateral consequences, a trial court's or defense lawyer's affirmative misrepresentation about the collateral effects of a guilty plea may render the plea invalid, either directly or due to ineffective assistance of counsel, if the defendant can show prejudice as a result. See *Stinson*, 286 Ga. at 500 (explaining that this Court has distinguished " 'the failure to inform about those [collateral] consequences from an affirmative misrepresentation about those consequences' " (citation omitted)); *State v. Sabillon*, 280 Ga. 1, 2 (622 SE2d 846) (2005) (same, in context of alleged misrepresentation regarding immigration consequences of a guilty plea). Smith does not allege that he was affirmatively misled by the trial court or his plea counsel regarding the immigration consequences of his guilty plea.

If a parole decision that will be made by a state agency pursuant to state law is a collateral consequence of a guilty plea, see *Williams v. Duffy*, 270 Ga. at 581, then it would seem to follow that an immigration decision that will be made by a federal agency under federal law is also a collateral consequence. The Court of Appeals reached that conclusion in *McLeod*, 251 Ga. App. at 372, and that is also the view of the vast majority of federal and state courts that have considered the issue. See, e.g., *State v. Zarate*, 651 NW2d 215, 222-223 (Neb. 2002) (adopting that view and citing supporting cases from six federal circuit courts and 13 states, with only one state to the contrary). See also *Garcia v. State*, 152 Ga. App. 889, 889 (264 SE2d 323) (1980) (holding that "[t]he subsequent action of the federal parole authorities was a collateral consequence over which the superior court had no control and, as such, did not affect the voluntariness or validity of the guilty plea"); *Davis v. State*, 151 Ga. App. 736, 736 (261 SE2d 468) (1979) (holding that "the trial court is not required to inform a defendant of all the possible collateral consequences of his plea including those at the hands of a different sovereign," where the defendant's nolo contendere plea resulted in a federal indictment).

(b) *Padilla v. Kentucky*, which was decided after the Court of Appeals' decision in this case, raises some doubt about this view. In *Padilla*, the United States Supreme Court considered a claim that, to provide effective assistance of counsel as required by the Sixth Amendment, a criminal defendant's counsel "must inform her client whether his plea carries a risk of deportation." 558 U. S. at ___ (130 SC at 1486). In addressing this issue, the Court explained that "[o]ur law has enmeshed criminal convictions and the penalty of deportation for nearly a century," and "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders." Id. at ___ (130 SC at 1481). Adding that "we find it 'most difficult' to divorce the penalty from the conviction in the deportation context," and "we are quite confident that noncitizen defendants facing a risk of deportation for a particular offense find it even more difficult," the Court stated that "[d]eportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence." Id. at ___ (130 SC at 1481-1482) (citation omitted).

Ultimately, however, the Supreme Court decided that whether counsel is constitutionally effective turns not on whether counsel is advising the defendant on the direct or collateral consequences of a guilty plea, but rather on whether counsel's performance was " 'reasonable[ ] under prevailing professional norms.' " *Padilla*, ___ U. S. ___ (130 SC at 1482) (quoting *Strickland v. Washington*, 466

U. S. 668, 688 (104 SC 2052, 80 LE2d 674) (1984)). The Court then concluded that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." Id. The Court further explained that

> [t]here will . . . undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.

Id. (130 SC at 1483) (footnote omitted).

Thus, a defendant who is not a United States citizen and can show that his lawyer did not adequately advise him of the risks of deportation resulting from his guilty plea will satisfy the first prong of the *Strickland* ineffectiveness test — deficient performance. See *Padilla*, ___ U. S. at ___ (130 SC at 1483). To obtain relief, however, the defendant still must establish the second *Strickland* prong — prejudice, see id., which in the guilty plea context requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U. S. 52, 59 (106 SC 366, 88 LE2d 203) (1985).

(c) *Padilla*'s discussion of the "unique[ ] difficult[ies]" of characterizing immigration consequences as "direct" or "collateral," and its holding that counsel must advise non-citizen defendants about the potential immigration risks of a guilty plea, give us pause in deciding whether to endorse the Court of Appeals' holding that immigration risks are "collateral." We recognize that courts have often linked the analysis of direct and collateral consequences and the analysis of ineffective assistance claims. See, e.g., *Williams v. Duffy*, 270 Ga. at 581-582 (resolving ineffective assistance claim by finding no duty to advise of collateral consequences relating to parole eligibility); *Zarate*, 651 NW2d at 222 ("Since this doctrine provides a test for determining the voluntary and intelligent character of the plea, it is applied both to the trial court, as a measure of its performance in establishing the voluntary and intelligent nature of the plea before accepting it, and to defense counsel, as a measure of his or her performance in providing a defendant with the information necessary to render the plea voluntary and intelligent.").

The two doctrines are not, however, identical. Direct and collateral consequences relate to the trial court's duty to ensure that guilty pleas are knowingly and voluntarily entered as a matter of Fifth Amendment due process, while ineffective assistance of counsel relates to the defense lawyer's duty pursuant to the Sixth Amendment. See *Williams v. Duffy*, 270 Ga. at 583 (Fletcher, P. J., dissenting) (noting that "defense counsel's obligation to his client in entering a guilty plea is not defined by a trial court's duties in accepting a guilty plea," and "[w]hile the two concepts are interrelated, . . . the more logical approach is to recognize that a defendant's sixth amendment claim of ineffective assistance of counsel is separate from a due process claim that a plea was not knowingly and voluntarily made").

*Padilla* confirms this analytical distinction. The U. S. Supreme Court specifically declined to rely on the direct versus collateral consequences doctrine in determining the ineffective assistance claim presented, instead applying *Strickland*'s familiar evaluation of whether counsel acted reasonably in light of the prevailing professional norms for criminal defense lawyers. This approach clarifies that defense counsel may be ineffective in relation to a guilty plea due to professional duties for the representation of their individual clients that set a standard different — and higher — than those traditionally imposed on trial courts conducting plea hearings for defendants about whom the judges often know very little. This makes both analytical and practical sense.

In short, despite its discussion of the importance of deportation risks to some defendants, in the end the Supreme Court did *not* extend the direct consequences doctrine to that issue, or reject the basic distinction between direct and collateral consequences in determining whether a defendant's guilty plea was knowingly and voluntarily entered. In the absence of such a binding directive to do so, we decline to do so either.

We do not dispute that deportation is "intimately related to the criminal process," and that the potential for removal from this country by federal authorities as a result of a guilty plea may be of enormous concern to a defendant. See *Padilla*, ___ U. S. at ___ (130 SC at 1481). But that remains a consequence beyond the authority of the sentencing court, and one that does not lengthen or alter the sentence that the state court imposes. Other consequences that are also the result (sometimes even the automatic result) of guilty pleas can also be of enormous concern to certain defendants, but those consequences are similarly beyond the authority of the sentencing court. This may include, but is not limited to, the impact of the criminal conviction on a defendant's parole eligibility; related crimi-

nal or civil proceedings, including prosecution by other jurisdictions and civil forfeiture; civil commitment; sex offender registration; child custody and other family law matters; professional licenses and ability to earn a living; and civil rights, such as the right to vote or possess firearms.

If this Court extended the concept of direct consequences of a guilty plea to include possible immigration issues, it is not clear how we could draw the line there. For example, can we really say that a non-citizen defendant's ignorance of the risk of deportation so undermines the knowing and voluntary nature of her guilty plea that it violates due process, while still holding that a defendant's ignorance of the risk that she will lose custody of her young children by entering a guilty plea does not invalidate the plea? The ultimate result of extending the direct consequences doctrine to matters beyond the authority of the sentencing court would be to place on our trial courts the unrealistic burden of having to determine, before accepting each guilty plea, all of the potential important consequences of the plea to the particular defendant appearing before the court. That is something the law has never required. The better course is to recognize, as we discuss in Division 3 below, that the combination of OCGA § 17-7-93 (c), USCR 33.8 (C) (2), and *Padilla* provide defendants facing immigration consequences with much the same protection, without starting us down that slippery slope.

(d) Smith also argues that the General Assembly's enactment of OCGA § 17-7-93 (c) renders immigration risks a direct consequence of a guilty plea, particularly given the statute's use of language suggestive of the constitutional concept that a guilty plea must be entered voluntarily and knowingly. See id. ("In addition to any other inquiry by the court prior to acceptance of a plea of guilty, the court shall determine whether the defendant is *freely* entering the plea with an *understanding* that if he or she is not a citizen of the United States, then the plea may have an impact on his or her immigration status." (emphasis supplied)). What is required to make a guilty plea constitutional, however, is a matter of constitutional, not statutory, law. See *People v. Delvillar*, 922 NE2d 330, 339 (Ill. 2009) ("[A]lthough the legislature intended to further protect a defendant's right to voluntarily enter a guilty plea, the legislature cannot by statute alone add to what is constitutionally required of the [trial] court."). See also *Britt v. Smith*, 274 Ga. 611, 611-612 (556 SE2d 435) (2001) (holding that, while this Court had the authority to promulgate USCR 33.8 to require trial courts to inform defendants on the record of certain rights that will be waived by pleading guilty, "this Court cannot amend the federal or state constitutions by incorporating the Rules therein"). OCGA § 17-7-93 (c) provides defendants

with an additional and valuable right with respect to guilty pleas, but it is a statutory right, to be enforced as such, as discussed below.

(e) For these reasons, we hold that the impact that a guilty plea might have on a defendant's immigration status is a collateral consequence of the plea, so that the trial court's failure to advise a defendant regarding the potential impact does not require that the guilty plea be set aside as a matter of constitutional law. The Court of Appeals did not err in that regard. However, as Smith's appellate counsel recognize, the analysis cannot end with that conclusion, because OCGA § 17-7-93 (c), USCR 33.8 (C) (2), and *Padilla* still might provide relief to a defendant on direct appeal who was not advised of the possible immigration consequences of entering a guilty plea.

3. Although the General Assembly cannot alter what the Constitution requires of courts with respect to accepting guilty pleas, OCGA § 17-7-93 (c) creates a statutory mandate requiring the trial courts of this state to advise all defendants who wish to plead guilty that, if the defendants are not United States citizens, the plea may have an impact on their immigration status. Similarly, this Court has held that the provisions of USCR 33, which governs guilty pleas, are mandatory in the trial courts. See *State v. Evans*, 265 Ga. 332, 333-334 (454 SE2d 468) (1995). USCR 33.8 (C) (2) is one such provision.

If a defendant challenges the validity of his guilty plea on direct review, the State has the burden of showing substantial compliance with USCR 33, along with the constitutional requirements that underlie portions of that rule. See *King v. State*, 270 Ga. 367, 369 (509 SE2d 32) (1998). Likewise, if such a challenge is based on violation of OCGA § 17-7-93 (c), the State must show that the trial court complied, in substance, with that statute. See *McLeod*, 251 Ga. App. at 372 (explaining that OCGA § 17-7-93 (c) "does not require the trial court to recite formulaic advice to a defendant" and that, on appeal, compliance with the statute should be evaluated based on the record as a whole). The State may meet this burden using the record of the guilty plea itself or by filling gaps in a silent record through the use of extrinsic evidence. See *King*, 270 Ga. at 369.

However, if the State cannot show that the trial court satisfied the mandates of OCGA § 17-7-93 (c) and USCR 33.8 (C) (2), the defendant is not automatically entitled to relief. Before sentence is imposed, a defendant has an absolute right to withdraw a guilty plea. See OCGA § 17-7-93 (b). After that point, however, even if the record does not adequately demonstrate compliance with one of USCR 33's provisions, the defendant must "prove[ ] that withdrawal [of the guilty plea] is necessary to correct a manifest injustice," as

provided by USCR 33.12. See *Evans*, 265 Ga. at 335-336. This high standard is justified for several reasons.

> First, once sentence is imposed, the defendant is more likely to view the plea bargain as a tactical mistake and therefore wish to have it set aside. Second, at the time the sentence is imposed, other portions of the plea bargain agreement will often be performed by the prosecutor, such as the dismissal of additional charges or the return or destruction of physical evidence, all of which may be difficult to undo if the defendant later attacks his guilty plea. Finally, a higher post-sentence standard for withdrawal is required by the settled policy of giving finality to criminal sentences which result from a voluntary and properly counseled guilty plea.

Id. at 336 (citation omitted).

These reasons apply with equal force to attempts to withdraw a guilty plea after sentencing based on a violation of OCGA § 17-7-93 (c). We note in this regard that OCGA § 17-7-93 (c) does not specify a different remedy for violations. See *Delvillar*, 922 NE2d at 337 (applying a similar standard to a similar Illinois statute, in the absence of a statutorily mandated remedy and where the court could not say "that the right the legislature intended to protect would generally be injured" by violation of the statute, particularly because United States citizens clearly are not affected by violations). Compare OCGA § 17-8-57 ("Should any judge violate this Code section [prohibiting judges in criminal cases from expressing or intimating an opinion as to what has or has not been proved or as to the guilt of the accused], the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed. . . ."). Accordingly, we hold that a defendant who seeks to withdraw a guilty plea after sentencing based on an alleged violation of either OCGA § 17-7-93 (c) or USCR 33.8 (C) (2) must prove that withdrawal is needed to correct a manifest injustice.

Thus, unless the defendant can show some real harm or prejudice from a violation of OCGA § 17-7-93 (c) and USCR 33.8 (C) (2), he is not entitled to withdraw his guilty plea. "We do not undertake to exhaustively define manifest injustice in this opinion." *Evans*, 265 Ga. at 336. However, to show that a manifest injustice resulted in this context, it is clear that the defendant will need to establish, at a minimum, three facts.

First, the defendant will have to show that his guilty plea actually "may have an impact on his or her immigration status." OCGA § 17-7-93 (c); USCR 33.8 (C) (2). We emphasize that the plain text of these provisions requires trial courts to advise *all* defendants

of the potential impact of a guilty plea on their immigration status. This avoids the need to make citizenship determinations during plea hearings and helps to ensure that all non-citizens will receive the admonition. See *McLeod*, 251 Ga. App. at 372 (noting that "a person's citizenship may not be apparent," so that the advice regarding potential immigration consequences should be included "as a matter of routine"). Nevertheless, if the defendant is in fact a United States citizen, he faces no immigration consequences, see *Trop v. Dulles*, 356 U. S. 86, 103 (78 SC 590, 2 LE2d 630) (1958) (plurality opinion) (holding that the Eighth Amendment forbids revoking a defendant's citizenship as punishment for a crime), and his decision to enter a guilty plea could not have been affected by ignorance of such non-consequences. See *Delvillar*, 922 NE2d at 337. Likewise, every guilty plea will not pose a meaningful risk to every non-citizen's immigration status. Thus, conclusory allegations that a guilty plea has an impact on a particular defendant's immigration status, made without support in fact and in immigration law, are insufficient to establish harm. See *Delvillar*, 922 NE2d at 339 (explaining that, "although the *amici* have presented this court with several possible immigration consequences for noncitizens convicted of weapons felonies, we reiterate that defendant failed to show the [trial] court, in his motion or argument, that any of those consequences have been or will be applied to him").

Second, the defendant must show that he was not aware of the potential impact of the guilty plea on his immigration status from some source other than the trial court. Otherwise, the trial court's omission of the OCGA § 17-7-93 (c) and USCR 33.8 (C) (2) advice will have made no difference to the decision to enter the plea. See *McLeod*, 251 Ga. App. at 372 (affirming guilty plea on direct appeal despite the trial court's violation of OCGA § 17-7-93 (c) where the transcript of the plea hearing "indisputably shows that McLeod realized a plea could have an effect on her immigration status"); *Palacios v. State*, 250 Ga. App. 794, 794 (554 SE2d 498) (2001) (affirming order denying motion to withdraw guilty plea for violation of OCGA § 17-7-93 (c), noting that "prior to entering this plea, Palacios had twice come before the court intending to plead," and "[t]he first time, Palacios refused to enter a plea for fear he would be deported"). The U. S. Supreme Court has now held that defense counsel, in order to be constitutionally effective, must provide advice to non-citizen defendants of the potential immigration consequences of guilty pleas. See *Padilla*, ___ U. S. at ___ (130 SC at 1486). Thus, for a defendant to prevail on a claim under OCGA § 17-7-93 (c) or USCR 33.8 (C) (2), he will essentially need to show that his defense counsel performed deficiently. For this reason, one would expect that in the future, most defendants claiming a violation of USCR 33.8 (C)

(2) or OCGA § 17-7-93 (c) will also raise a claim of ineffective assistance of counsel. For either claim, the defendant will need to show that he was unaware of the immigration risks of the plea from any other source (like an immigration attorney or an ongoing immigration proceeding) in order to show that the trial court's error caused a manifest injustice and that trial counsel's error resulted in prejudice.

Finally, the defendant will need to show that he would not have pled guilty even if he knew about the risks to his immigration status. See *Sabillon*, 280 Ga. at 2-3 (holding that a defendant whose counsel affirmatively misrepresented the immigration risks still had to show, through "evidence of his mindset," a reasonable probability that he otherwise would have insisted on going to trial). See also *Padilla*, ___ U. S. at ___ (130 SC at 1485) (noting that to obtain relief on an ineffective assistance claim regarding a guilty plea, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances"). Non-citizen defendants facing serious charges and strong prosecution cases may be far more concerned about the amount of prison time they will serve than the deportation that will follow upon their release. See, e.g., *People v. Mrugalla*, 868 NE2d 303, 307 (Ill. App. Ct. 2007) (holding that the defendant failed to show prejudice because "[t]he record indicates it is not likely that defendant would have succeeded at trial" and he "faced the same immigration consequences whether he pleaded guilty or went to trial").

The defendant may be able, initially, to make these showings through his own testimony by stating: (1) that he is not a citizen; (2) that the facts, viewed in conjunction with the immigration laws, show some real risk to his immigration status; (3) that no one ever advised him of those risks; and (4) that if he had known of the risks, he would have refused to plead guilty and taken his chances at trial. The State may then seek to rebut the claim of manifest injustice on any or all of these grounds or on other grounds. These issues will be the subject of factual determinations by the trial court, whose findings we will accept unless they are clearly erroneous, see *Stinson*, 286 Ga. at 501, and whose ultimate decision as to whether to allow the guilty plea to be withdrawn will be reviewed for abuse of discretion, see *Norris v. State*, 277 Ga. App. 289, 292 (626 SE2d 220) (2006).

On direct appeal, the record on which a defendant may seek to show manifest injustice based on a violation of OCGA § 17-7-93 (c) or USCR 33.8 (C) (2), or prejudice under *Padilla*, will depend on when and how the claim was made and ruled on. A direct appeal — timely or untimely — from a guilty plea is available "only if the issue on appeal can be resolved by facts appearing in the record." *Morrow*

*v. State*, 266 Ga. 3, 3-4 (463 SE2d 472) (1995).[5] The defendant will therefore have only the trial court record, including the record of the guilty plea and sentencing as well as any subsequent evidence that was properly presented to the reviewing court, assuming all of that is also properly included in the record on appeal; the State may rely on the same record to rebut the claim. See *King*, 270 Ga. at 371 (citing *Wharton v. Henry*, 266 Ga. 557, 558 (469 SE2d 27) (1996)).[6] The defendant may file a timely motion to withdraw the plea after sentencing, see *Brown*, 280 Ga. at 658 (trial court's authority to withdraw a guilty plea ends with the expiration of the term of court in which the plea was entered), which may lead to an evidentiary hearing at which the record can be expanded. See *King*, 270 Ga. at 371 (discussing evidence presented at hearing on motion to withdraw guilty plea). On many occasions, however, the record, after whatever development of it occurs in the trial court, will be insufficient for the defendant to show manifest injustice.[7]

In that event, the defendant would not be entitled to a direct appeal, and he must seek relief in a petition for habeas corpus, where he may be able to supplement the record with an evidentiary hearing. See *Marion v. State*, 287 Ga. 134 (695 SE2d 199) (2010); *Morrow*, 266 Ga. at 4. Habeas corpus, however, is available only to address "a substantial denial of [the prisoner's] rights under the Constitution of the United States or of this state." OCGA § 9-14-42 (a). Thus, this Court has held that, "[b]ecause USCR 33.8 is not a constitutional provision, the question of whether its requirements 'were violated is not cognizable in a habeas action.' " *Britt v. Smith*,

---

[5] If, as in this case, the defendant asserts that his appeal is untimely because plea counsel was ineffective in advising him to appeal, the Court may remand the case for an evidentiary hearing on that issue. See *Baker v. State*, 273 Ga. 842, 843 (545 SE2d 879) (2001) ("[A]n evidentiary hearing on the motion for out-of-time appeal . . . is necessary when the trial court is unable to determine from the record who was responsible for the failure to file a timely direct appeal."). However, the defendant must first show that the claim he wants to raise on appeal can be resolved on the face of the existing record, see *Grantham v. State*, 267 Ga. 635, 635 (481 SE2d 219) (1997), and would not be resolved against him, see *Brown v. State*, 280 Ga. 658, 659 (631 SE2d 687) (2006). In other words, if even a timely direct appeal would have been unsuccessful, then plea counsel's failure to advise the defendant to file such an appeal was not professionally deficient, nor did any prejudice result.

[6] *Wharton v. Henry* was an appeal from a habeas corpus case in which the alleged manifest injustice related to the trial court's failure to make itself aware of the factual basis for the guilty plea pursuant to USCR 33.9. See 266 Ga. at 558. Although *Wharton* remains valid regarding the record on which the manifest injustice analysis should be conducted, our subsequent decision in *Britt v. Smith* held that such a rule violation is not cognizable in habeas corpus. See 274 Ga. at 612.

[7] Although a defendant who hopes to appeal successfully from a guilty plea is not required to first file a motion to withdraw the plea, the possibility of expanding the record on which the appeal will be reviewed, and doing so with the assistance of appointed counsel if indigent, should create a strong incentive for defendants to do so. A motion to withdraw the plea also permits the trial court to consider and correct any defects in the guilty plea in the first instance.

274 Ga. at 612 (quoting *Parker v. Abernathy*, 253 Ga. 673, 674 (324 SE2d 191) (1985)). Statutory claims under OCGA § 17-7-93 (c) would suffer the same fate. See *Parker*, 253 Ga. at 674 (rejecting habeas review of a claim based on a statute, noting that OCGA § 9-14-42 (a) was amended in 1982 to delete a provision that had allowed habeas review of alleged denials of rights under the laws of this state). See also *United States v. Timmreck*, 441 U. S. 780, 784 (99 SC 2085, 60 LE2d 634) (1979) (holding that federal habeas corpus relief is not available for failure to comply with the federal rule governing acceptance of guilty pleas).

This might seem to leave without any remedy defendants who actually face manifest injustice if they cannot withdraw guilty pleas entered without being advised of the risk of immigration consequences as OCGA § 17-7-93 (c) and USCR 33.8 (C) (2) mandate. The law sometimes requires such a harsh result when defendants fail to assert their claims in both proper and timely fashion. But *Padilla* and our decision today should provide some relief for defendants in this situation. A defendant who pleads guilty without being made aware of real immigration consequences by either his plea counsel or the trial court, and who can show prejudice as a result, may now have a viable claim in habeas corpus for ineffective assistance of counsel, if counsel performed deficiently in not advising him of the immigration risks and perhaps also if counsel improperly failed to object at the plea hearing to the trial court's non-compliance with OCGA § 17-7-93 (c) and USCR 33.8 (C) (2).[8]

4. Applying these principles to the facts of this case, the State concedes that there is no evidence in the record showing compliance with OCGA § 17-7-93 (c) and USCR 33.8 (C) (2). However, Smith cannot show any manifest injustice on the face of the record as it now stands.

In his motion and his briefs, Smith asserts that he is not a United States citizen. If that is true, it appears that he would face significant immigration consequences as a result of his conviction of aggravated felonies. See 8 USC § 1227 (a) (2) (A) (iii) (providing for removal from the United States, upon order of the Attorney General, of an alien convicted of an aggravated felony after admission). See also 8 USC § 1182 (a) (2) (A) (i) (I) (making an alien convicted of a crime of moral turpitude generally ineligible to receive a visa and to be admitted to the United States). This critical fact, however, is not established by evidence in the record. See *Coweta Bonding Co. v.*

---

[8] We do not consider here whether the holding in this case or the holding in *Padilla* will be applied retroactively to convictions challenged in habeas corpus. See *Harris v. State*, 273 Ga. 608, 610 (543 SE2d 716) (2001) (citing *Teague v. Lane*, 489 U. S. 288 (109 SC 1060, 103 LE2d 334) (1989)).

*Carter*, 230 Ga. 585, 586 (198 SE2d 281) (1973) ("This court can not consider factual representations in the appellant's brief which do not appear on record."). It is undisputed that Smith was born in Panama, but as the State contends, that does not preclude United States citizenship. See 8 USC § 1431; *Kawakita v. United States*, 343 U. S. 717, 723-724 (72 SC 950, 96 LE 1249) (1952) (discussing dual nationality). We note that, although it is not in the record in admissible form, an "Interview Worksheet" ostensibly filled out by Smith's arresting officer records "Colon, Panama" as Smith's place of birth but lists "U.S." as his citizenship.

There is also no record evidence showing that Smith was not aware of the potential for immigration consequences from some source other than the trial court, including his plea counsel, whom he charges with ineffective assistance only with regard to advice about appealing. Nor has Smith shown on the record that he would not have pled guilty even if properly advised. He has not identified any weakness in the State's case, and his plea bargain resulted in the dismissal of nine other serious charges.

Given this silence in the record, Smith was not entitled to even a timely direct appeal from his guilty plea, and we therefore need not address whether the untimeliness of his appeal is excused by the alleged ineffectiveness of his plea counsel. See *Grantham*, 267 Ga. at 635. Smith asks that we remand for an evidentiary hearing, but under these circumstances, if he wishes to expand the record, he must seek to do so in a petition for habeas corpus, see *Morrow*, 266 Ga. at 4, where he will not be able to raise his statute- and rule-based claims but might be able to raise a constitutional claim of ineffective assistance of counsel. We express no opinion as to whether such a habeas petition would be procedurally sound or meritorious.

5. We close by emphasizing to the trial courts that the difficult issues and additional litigation which may arise if defendants are not advised on the record that a guilty plea may have an impact on their immigration status can be avoided simply by complying fully with the mandates of OCGA § 17-7-93 (c) and USCR 33.8 (C) (2). Prosecutors may assist the trial courts by reminding them of those mandates if the advice is not provided at the guilty plea hearing. And defense lawyers should serve as an additional backstop, especially now that their failure independently to advise non-citizen clients about the potential for immigration consequences will be deemed constitutionally deficient professional performance.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 28, 2010.

*Sarah L. Gerwig-Moore, Amanda Heath, David Gram*, for appellant.

*Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.