**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 14, 2014**

# In the Court of Appeals of Georgia

A13A1745. POOLE v. THE STATE.

BARNES, Presiding Judge.

Mark Winford Poole entered a plea of guilty but mentally ill to three counts of terroristic threats and two counts of stalking pursuant to *North Carolina v. Alford*, 400 U.S. 25 (91 SCt 160, 27 LE2d 162) (1970). During the same term of court, Poole filed a motion to withdraw his guilty plea and a motion in arrest of judgment, both of which the trial court denied. On appeal, Poole contends that the trial court erred in denying his motion to withdraw his guilty plea because the court failed to follow the procedure set forth in OCGA § 17-7-131 (b) (2) for acceptance of a plea of guilty but mentally ill. Poole also contends that the trial court erred in denying his motion in arrest of judgment with respect to the terroristic threats counts because the indictment failed to allege with sufficient particularity the "crime of violence" threatened against

the victims and failed to allege any corroboration for the alleged threats. For the reasons discussed below, we affirm.

1. Poole first argues that he was entitled to withdraw his plea to the terroristic threats and stalking charges because the trial court failed to follow the procedures set forth in OCGA § 17-7-131 (b) (2) for acceptance of a plea of guilty but mentally ill. We are unpersuaded because Poole has failed to prove that withdrawal of his plea is necessary to correct a manifest injustice.

Mental illness is not an element of the underlying criminal offense, see *Spivey v. State*, 253 Ga. 187, 189 (2) (319 SE2d 420) (1984), and the trial court is to sentence a defendant found guilty but mentally ill "in the same manner as a defendant found guilty of the offense," except in death penalty cases. OCGA § 17-7-131 (g) (1), (j). See *Snyder v. State*, 201 Ga. App. 66, 70 (10) (410 SE2d 173) (1991). "[T]he guilty but mentally ill verdict merely allows for accommodation to the mental health needs of those defendants who are guilty, but have a mental disorder which falls short of insanity and delusional compulsion." (Citation, punctuation, and emphasis omitted.) *Dimauro v. State*, 185 Ga. App. 524, 526 (4) (364 SE2d 900) (1988). Specifically, Georgia law provides that a defendant found guilty but mentally ill at the time of the underlying offense "shall be committed to an appropriate penal facility and shall be

2

evaluated then treated, if indicated, within the limits of state funds appropriated therefor, in such manner as is psychiatrically indicated for his or her mental illness." OCGA § 17-7-131 (g) (1). If clinically indicated, a defendant found guilty but mentally ill also can be temporarily transferred from a penal facility to the Department of Behavioral Heath and Development Disabilities for treatment of his or her mental illness. See OCGA § 17-7-131 (g) (2).

OCGA § 17-7-131 (b) (2) sets forth the procedures that are to be followed by the trial court when a defendant chooses to enter a plea of guilty but mentally ill. That statutory subsection provides in relevant part:

> A plea of guilty but mentally ill at the time of the crime . . . shall not be accepted until the defendant has undergone examination by a licensed psychologist or psychiatrist and the court has examined the psychological or psychiatric reports, held a hearing on the issue of the defendant's mental condition, and is satisfied that there is a factual basis that the defendant was mentally ill at the time of the offense[.]

We have held that the procedural requirements of OCGA § 17-7-131 (b) (2) are sufficiently fulfilled if a factual basis for the plea of guilty but mentally ill was established at the plea hearing. See *Cullers v. State*, 247 Ga. App. 155, 156-157 (543 SE2d 763) (2000) (two psychological evaluations were conducted, one at request of

trial court and other at request of defendant, and the findings of both reports were read into record at plea hearing); *Barber v. State*, 240 Ga. App. 156, 157-158 (2) (522 SE2d 528) (1999) (defense counsel obtained an independent psychiatric report and read the defendant's psychiatric history into the record at plea hearing).

As the State conceded at the hearing on Poole's motion to withdraw his plea, the procedural requirements imposed by OCGA § 17-7-131 (b) (2) were not followed at the plea hearing in the present case. At the plea hearing, the State recited the factual basis for the terroristic threats and stalking charges against Poole, but there was no discussion by either party of the factual basis for Poole pleading guilty but mentally ill. Furthermore, Poole and his counsel expressly withdrew at the hearing their previously filed motion for a psychological or psychiatric examination, and thus the trial court was not presented with any psychological or psychiatric reports regarding Poole's mental status at the time he committed the underlying offenses.

Nevertheless, we conclude that even if the State cannot demonstrate that the trial court complied with OCGA § 17-7-131 (b) (2), Poole was not automatically entitled to withdraw his plea of guilty but mentally ill. In reaching this conclusion, we look to the analogous context where a trial court fails to comply with the procedural requirements for pleas imposed by the provisions of Uniform Superior

4

Court Rule ("USCR") 33. In that context, it is well settled that even if the record does not adequately demonstrate compliance with the provisions of USCR 33, a defendant is entitled to withdraw his plea "only to correct a manifest injustice." (Citation, punctuation, and footnote omitted.) *Foster v. State*, 281 Ga. App. 584 (1) (636 SE2d 759) (2006). See *Smith v. State*, 287 Ga. 391, 399 (3) (697 SE2d 177) (2010).

> This high standard is justified for several reasons. First, once sentence is imposed, the defendant is more likely to view the plea bargain as a tactical mistake and therefore wish to have it set aside. Second, at the time the sentence is imposed, other portions of the plea bargain agreement will often be performed by the prosecutor, such as the dismissal of additional charges or the return or destruction of physical evidence, all of which may be difficult to undo if the defendant later attacks his guilty plea. Finally, a higher post-sentence standard for withdrawal is required by the settled policy of giving finality to criminal sentences which result from a voluntary and properly counseled guilty plea.

(Citation omitted.) *Smith*, 287 Ga. at 400 (3).

In the recent *Smith* case, our Supreme Court held that the reasons for requiring a showing of manifest injustice in the context of a violation of USCR 33's provisions applied with equal force to a motion to withdraw a guilty plea based on a violation of OCGA § 17-7-93 (c), which requires a trial court to advise a defendant on the

5

record that his guilty plea may have an impact on his immigration status.[1] *Smith*, 287 Ga. at 400 (3). The Supreme Court reasoned that the manifest injustice standard should control, particularly since OCGA § 17-7-93 (c) did not specify a different remedy for violations of its terms. Id. Compare OCGA § 17-8-57 (requiring by its express terms reversal of conviction and grant of new trial where trial judge in criminal case expresses or intimates opinion as to what has or has not been proven or as to the guilt of the accused).

By analogy to *Smith*, we conclude that the reasons for requiring a showing of manifest injustice apply equally to motions to withdraw a guilty plea based on a violation of OCGA § 17-7-131 (b) (2). As with the statute at issue in *Smith*, OCGA § 17-7-131 (b) (2) does not specify a different remedy for violations of its terms. Accordingly, we conclude that a defendant who seeks to withdraw a plea of guilty but

---

[1] OCGA § 17-7-93 (c) provides:
In addition to any other inquiry by the court prior to acceptance of a plea of guilty, the court shall determine whether the defendant is freely entering the plea with an understanding that if he or she is not a citizen of the United States, then the plea may have an impact on his or her immigration status. This subsection shall apply with respect to acceptance of any plea of guilty to any state offense in any court of this state or any political subdivision of this state.

6

mentally ill based on an alleged violation of OCGA § 17-7-131 (b) (2) must prove that withdrawal is necessary to correct a manifest injustice.

To prove manifest injustice, Poole must "show some real harm or prejudice" resulting from the violation of OCGA § 17-7-131 (b) (2). *Smith*, 287 Ga. at 400 (3). See *Williams v. State*, 287 Ga. App. 754, 755 (652 SE2d 637) (2007) (manifest injustice analysis requires that alleged violation "be tested for harm"). Poole, however, has failed to make such a showing. At the hearing on his motion to withdraw his plea, Poole presented no evidence whatsoever that he has been harmed or prejudiced by the entry of his plea of guilty but mentally ill. Moreover, as we explained in *Barber*, 240 Ga. App. at 158 (3),

> the "guilty but mentally ill" plea is for the benefit of the defendant, because (1) it provides for mental health treatment during the sentence, and (2) it recognizes a reduced level of culpability. Therefore, if the sentencing court fail[s] to strictly comply with OCGA § 17-7-131 (b) (2), such failure inure[s] to [the defendant's] benefit and [is] harmless error.

Consequently, withdrawal of Poole's plea of guilty but mentally ill is not necessary to correct a manifest injustice, and we therefore affirm the trial court's denial of his motion to withdraw his plea.[2]

2. Poole contends that the trial court erred in denying his motion in arrest of judgment with respect to the terroristic threats charges because the indictment (a) failed to allege with sufficient particularity the "crime of violence" threatened against the victims and (b) failed to allege any corroboration for the alleged threats. We disagree with both contentions.

> A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence with the purpose of terrorizing another. The crime of making terroristic threats focuses

---

[2] We note that if neither the record from the plea hearing nor other portions of the record demonstrate a factual basis for the defendant to have pled guilty to the *underlying criminal offense*, withdrawal of the defendant's guilty plea may be necessary to correct a manifest injustice. See generally *Brownlee v. City of Atlanta*, 212 Ga. App. 174, 174-175 (441 SE2d 492) (1994); *Watt v. State*, 204 Ga. App. 839, 840 (1) (420 SE2d 769) (1992). But, as previously noted, mental illness is not an element of the underlying offense. See *Spivey*, 253 Ga. at 189 (2). Furthermore, the purpose for requiring a trial court to inquire into the factual basis supporting the underlying offense "is to protect against someone pleading guilty when that person may know what he has done but may not know that those acts do not constitute the crime with which he is charged." *State v. Evans*, 265 Ga. 332, 334 (2) (454 SE2d 468) (1995). That concern is not present here, where the State recited the factual basis for Poole pleading guilty to the terroristic threats and stalking charges at the plea hearing.

solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize.

(Citations and punctuation omitted.) *Clement v. State*, 309 Ga. App. 376, 379 (1) (710 SE2d 590) (2011). See OCGA § 16-11-37 (a). Thus, "[t]he essential elements of terroristic threats and acts are: (1) a threat to commit any crime of violence (2) with the purpose of terrorizing another." (Citation and punctuation omitted.) *Martin v. State*, 219 Ga. App. 277, 283 (10) (464 SE2d 872) (1995). A defendant cannot be convicted of terroristic threats based on "the uncorroborated testimony of the party to whom the threat is communicated." OCGA § 16-11-37 (a).

Here, each of the three terroristic threats counts of the indictment states that Poole is accused of the offense of terroristic threats, cites to the pertinent criminal statute (OCGA § 16-11-37), and alleges that Poole, "with the intent to terrorize," threatened to commit a "crime of violence" against a specific victim on a specific date or limited range of dates, "contrary to the laws of this State, the good order, peace and dignity thereof." The three counts do not identify the particular "crime of violence" threatened by Poole and do not make any reference to corroboration.

Poole did not file a pretrial motion, such as a general or special demurrer, challenging the sufficiency of the indictment. Instead, he waited until after entering

his plea of guilty but mentally ill to challenge the indictment in his motion in arrest of judgment.

(a) We reject Poole's contention that the trial court should have granted his motion in arrest of judgment because the indictment failed to allege with sufficient particularity the "crime of violence" threatened against the victims. "A motion in arrest of judgment must be based upon a defect that the accused might otherwise have challenged by a timely general demurrer." *Lowe v. State*, 276 Ga. 538, 539 (2) (579 SE2d 728) (2003). See *Swanson v. State*, 309 Ga. App. 381, 382 (708 SE2d 307) (2011). "A general demurrer challenges the validity of an indictment by asserting that the substance of the indictment is legally insufficient to charge any crime," and it should be granted "only when an indictment is absolutely void in that it fails to charge the accused with any act made a crime by the law." (Citations, punctuation, and emphasis omitted.) *State v. Wilson*, 318 Ga. App. 88, 91-92 (1) & n. 10 (732 SE2d 330) (2012). Put another way,

> [t]he true test of the sufficiency of an indictment to withstand a general demurrer[] . . . is found in the answer to the question: Can the defendant admit the charge as made and still be innocent? If he can, the indictment is fatally defective. If the indictment is fatally defective, the sufficiency of the indictment can be questioned by general demurrer or by motion in arrest of judgment.

10

(Citation and punctuation omitted.) *State v. Eubanks*, 239 Ga. 483, 485 (238 SE2d 38) (1977).

The indictment in the present case was not fatally defective for failing to specify the "crime of violence" threatened against the victims. Each of the three terroristic threats counts recited all of the elements of the crime and couched the allegations in the language of the terroristic threats statute, OCGA § 16-11-37 (a). The general rule is that "[a]n indictment which charges a defendant with the commission of a crime in the language of a valid statute is sufficient to withstand a [general] demurrer charging that the indictment is insufficient to charge the defendant with any offense under the laws of this state." *Stewart v. State*, 246 Ga. 70, 72 (2) (268 SE2d 906) (1980). See *Carter v. State*, 252 Ga. 502, 504 (3) (315 SE2d 646) (1984) ("An indictment is not subject to general demurrer when it is written in the form set out in OCGA § 17-7-54 . . . and couched in the language of the statute alleged to have been violated.") (citation and punctuation omitted); *State v. Austin*, 297 Ga. App. 478, 479 (677 SE2d 706) (2009) ("By tracking the statute, the [S]tate presented a technically correct allegation.") (footnote omitted). Furthermore, Poole could not have admitted the allegations of the indictment without admitting that he was guilty of the crime of terroristic threats. It follows that the indictment was not

11

fatally defective and that Poole could not succeed on his motion in arrest of judgment. Compare *Newsome v. State*, 296 Ga. App. 490, 491-493 (1) (675 SE2d 229) (2009) (count of accusation charging defendant with violation of family violence order was fatally defective and subject to general demurrer, where count recited only limited portions of the statute and did not otherwise state any specific facts upon which charge was based, and, as a result, failed to set out all of the essential elements of the crime).

Instead, as Poole's counsel conceded at the hearing on the motion, the contention that the indictment failed to allege with sufficient particularity the "crime of violence" threatened against the victims was "more of a special demurrer issue that was missed." See, e. g., *State v. Delaby*, 298 Ga. App. 723, 725-727 (681 SE2d 645) (2009) (defendant filed special demurrer to influencing a witness counts on ground that use of word "intimidation" in indictment was generic and should be defined with greater specificity); *State v. Tate*, 262 Ga. App. 311, 314 (2) (b) (585 SE2d 224) (2003) (defendant filed special demurrer to terroristic threats count on ground that indictment failed "to assert the specific threat alleged to have been made by him").[3]

---

[3] In *Lee v. State*, 117 Ga. App. 765, 766 (162 SE2d 229) (1968), we held that the trial court should have granted the defendant's demurrer to the indictment alleging threats of blackmail because the State "must allege the threat with such clearness and

12

"In contrast to a general demurrer, a special demurrer merely objects to the form of an indictment and seeks more information or greater specificity about the offense charged." (Emphasis omitted.) *Wilson*, 318 Ga. App. at 92 (1). See *Christian v. State*, 288 Ga. App. 546, 548 (2) (654 SE2d 452) (2007) (defendant seeking "greater specificity with regard to the . . . circumstances of the alleged crime" must file special demurrer). But "[a] special demurrer is waived if not raised before pleading to the merits of the indictment" and cannot be raised after conviction by a motion in arrest of judgment. *Harris v. State*, 258 Ga. App. 669, 670-671 (1) (574 SE2d 871) (2002). See *McDaniel v. State*, 298 Ga. App. 558, 559-560 (680 SE2d 593) (2009). Consequently, by failing to timely file a special demurrer, Poole waived his right to seek greater specificity in the form of the indictment, and he cannot now resurrect his challenge to the indictment in the guise of a motion in arrest of judgment. See *McDaniel*, 298 Ga. App. at 559-560.

_____

certainty as to apprise the accused of the particular acts or words or writing which is the gist of the offense." Notably, however, we did not specify in *Lee* whether the defendant had filed a general or special demurrer to the indictment, and thus that procedural issue was never addressed. As such, *Lee* is not inconsistent with our conclusion in the present case that Poole should have sought greater specificity regarding the terroristic threats counts through a special demurrer.

13

(b) We likewise reject Poole's contention that the indictment was required to set out the evidence that would be used by the State to corroborate the testimony of the victims about the terroristic threats. As previously noted, the essential elements of the crime of terroristic threats are a threat to commit a crime of violence with the purpose of terrorizing another. See OCGA § 16-11-37 (a); *Martin*, 219 Ga. App. at 283 (10). Corroboration is not an element of the offense, but rather an additional evidentiary rule imposed on the State by statute. And, as we have repeatedly explained, "it is not necessary for the [S]tate to spell out in the indictment the evidence on which it relies for a conviction." (Footnote omitted.) *Scruggs v. State*, 309 Ga. App. 569, 573 (2) (b) (711 SE2d 86) (2011). See *Mell v. State*, 69 Ga. App. 302, 304 (1) (25 SE2d 142) (1943). Hence, the trial court committed no error in denying Poole's motion in arrest of judgment on this asserted ground.

*Judgment affirmed. Miller and Ray, JJ., concur.*