[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15565

_____

D.C. Docket No. 4:17-cr-00065-WTM-GRS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

NAJEE OLIVER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(April 8, 2020)

Before WILSON, JILL PRYOR, and TALLMAN,* Circuit Judges.

WILSON, Circuit Judge:

---

* Honorable Richard C. Tallman, United States Circuit Judge for the Ninth Circuit, sitting by designation.

We vacate our prior opinion in *United States v. Oliver*, 946 F.3d 1276 (11th Cir. 2020), and substitute the following.

Najee Oliver pled guilty to possessing a firearm and ammunition as a convicted felon under 18 U.S.C. §§ 922(g) and 924(a)(2).  Based on his prior convictions, including a prior Georgia conviction for making terroristic threats under O.C.G.A. § 16-11-37(a) (2010), Oliver was sentenced under the Armed Career Criminal Act (ACCA) to 180 months in prison.  On appeal, Oliver argues that his prior conviction for making terroristic threats is not a predicate violent felony under the elements clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(i).  Because § 16-11-37(a) is indivisible and overbroad under *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016), a violation of that statute categorically does not constitute a predicate offense under the elements clause of the ACCA.  Therefore, Oliver does not have three qualifying predicate offenses, as required to support the application of the ACCA enhancement, and we remand to the district court for resentencing.

## I.    Background

Late one evening, an officer from the Savannah-Chatham Metropolitan Police Department observed Oliver pulling on car door handles.  When the officer approached, Oliver fled, and the officer followed.  During the pursuit, Oliver threw a firearm and a bag over a fence into a nearby construction site.  Shortly after, the

officer apprehended Oliver.  Police then investigated the construction site and recovered a loaded 9mm Glock pistol, which the police later determined was stolen in a residential burglary.  They also recovered the bag, which contained 45 grams of marijuana.

A federal grand jury indicted Oliver on three felony counts: possession of a firearm and ammunition by a convicted felon, in violation of §§ 922(g)(1) and 924(a)(2) (Count One); possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count Two); and using and carrying a firearm during and in relation to the drug trafficking offense charged in Count Two, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Three).  Oliver pled guilty to Count One pursuant to a written plea agreement, and the district court dismissed Counts Two and Three.

A probation officer prepared a presentence investigation report (PSI), which stated that Oliver qualified as an armed career criminal under the ACCA based on two prior convictions for possession with intent to distribute and his prior Georgia conviction for making terroristic threats.[1]  Based on an offense level of 30 and a criminal history category of VI, his initial guideline range was 168–210 months' imprisonment.  But because Oliver qualified as an armed career criminal, the

---

[1] The ACCA mandates a 15-year minimum sentence for a defendant who commits an offense in violation of § 922(g) and has three prior convictions for a violent felony or a serious drug offense.  18 U.S.C. § 924(e)(1).

ACCA mandated a 15-year minimum sentence.  The guideline range was thus 180–210 months.

At sentencing, Oliver objected to his armed-career-criminal status, arguing that his prior Georgia conviction for making terroristic threats did not qualify as a violent felony for purposes of the ACCA enhancement.  In the PSI, the probation officer asserted that Oliver's terroristic-threats conviction "clearly qualified as the 'threatened use of physical force against the person of another'" within the meaning of the ACCA.  Further, the government argued that, based on *United States v. Greer* (*Greer I*), 440 F.3d 1267, 1273–74 (11th Cir. 2006), and the conduct underlying the offense, Oliver's conviction for making terroristic threats was a violent felony under the ACCA.  The district court overruled Oliver's objection, applied the ACCA enhancement, and sentenced Oliver to 180 months' imprisonment.

## II.    Discussion

Oliver challenges the district court's determination that a conviction for making terroristic threats qualifies as a violent felony under the ACCA's elements clause.  He argues that Georgia's terroristic-threats statute, § 16-11-37(a), can be violated without the use, attempted use, or threatened use of physical force against the person of another.  Specifically, he argues that the statute can be violated by threatening to commit "any crime of violence" against the person *or property* of

another.  Therefore, he asserts, Georgia's statute is overly broad and encompasses conduct that falls outside of the ACCA's definition of a violent felony.

We review de novo a district court's determination that a prior conviction qualifies as a violent felony under the ACCA.  *See United States v. Howard*, 742 F.3d 1334, 1341 (11th Cir. 2014).

## A. The ACCA's Elements Clause

The ACCA imposes a 15-year mandatory-minimum sentence on defendants who violate § 922(g) and have three prior convictions for "a violent felony or a serious drug offense, or both."  18 U.S.C. § 924(e)(1).  Under the elements clause, the ACCA defines "violent felony" as any crime punishable by a term of imprisonment exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  *Id.* § 924(e)(2)(B)(i).

Under this provision, "use" requires active employment of physical force. *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004).  The Supreme Court has clarified that "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010).

In determining whether a state conviction qualifies as a violent felony under the ACCA's elements clause, we employ a "categorical approach," examining only

5

"the elements of the statute of conviction, not the specific conduct of a particular offender." *United States v. Davis*, 875 F.3d 592, 597 (11th Cir. 2017) (alteration accepted) (internal quotation marks omitted).  Because an examination of the state conviction does not involve an analysis of its underlying facts, we must presume that the conviction rested upon the "least of the acts criminalized" by the statute. *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (alteration accepted) (internal quotation mark omitted).  If the "least of the acts criminalized" by the statute of conviction has an element requiring "the use, attempted use, or threatened use of physical force against the person of another," then the offense categorically qualifies as a violent felony under the ACCA's elements clause.  *See Davis*, 875 F.3d at 597.  "If not, that is the end of our inquiry and the prior conviction does not count as a violent felony under the elements clause."  *Id.*

In a narrow range of cases, however, the statute of conviction is "divisible," which makes comparison of the elements more difficult.  A divisible statute "lists multiple, alternative elements," which "effectively creates several different crimes."  *Descamps v. United States*, 570 U.S. 254, 264 (2013) (alteration accepted) (internal quotation mark omitted).  For example, a divisible burglary statute might state that "burglary involves entry into a building *or* an automobile." *Id.* at 257.  When faced with an offense from a divisible statute, we must employ the "modified categorical approach" to determine "which crime in the statute

6

formed the basis of the defendant's conviction." *Davis*, 875 F.3d at 597. Under the modified categorical approach, a "court looks to a limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249.

## B. The *Mathis* Framework

Determining whether a statute is indivisible or divisible is not always a simple task. Sometimes, a statute may appear to describe alternative "elements"— that is, the "'constituent parts' of a crime's legal definition," which the prosecution must prove to obtain a conviction—but it actually describes alternative "means." *Cintron v. U.S. Att'y Gen.*, 882 F.3d 1380, 1384 (11th Cir. 2018). "Means," by contrast, are merely "various factual ways of committing some component of the offense [and] a jury need not find (or a defendant admit) any particular item." *Mathis*, 136 S. Ct. at 2249. This determination makes a difference: If a statute lists alternative means, rather than alternative elements, and any one of those means "would not constitute [a violent felony], then the statute is indivisible and categorically cannot constitute a [a violent felony under the ACCA]." *See Cintron*, 882 F.3d at 1384.

The Supreme Court in *Mathis* set forth a framework for determining whether an alternatively phrased statute sets forth elements or means. The Supreme Court instructed courts to consult "authoritative sources of state law," including the

7

language of the statute itself, pertinent state court decisions, and—if state law fails to provide clear answers—record documents from the defendant's own prior conviction. *Mathis*, 136 S. Ct. at 2256. As to a statute's text, the "statutory alternatives [may] carry different punishments," which would indicate that they were elements. *Id.* On the other hand, the alternatives may be "drafted to offer 'illustrative examples,'" in which case the alternatives would be different means of committing the offense. *Id.* Finally, "a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)." *Id.*

If the language of the statute does not resolve the question, "a state court decision may." *Cintron*, 882 F.3d at 1385 (citing *Mathis*, 136 S. Ct. at 2256). In *Mathis*, the Court concluded that a state court decision holding that the alternatively listed items were "alternative methods of committing one offense, so that a jury need not agree" on a specific statutory alternative, "definitively answer[ed] the question." *Mathis*, 136 S. Ct. at 2256 (alteration accepted) (internal quotation mark omitted). "When a ruling of that kind exists," the Court stated, "a sentencing judge need only follow what it says." *Id.*

And if the text of the statute and state decisional law is unclear, "then courts may look to other evidence of state law, including indictments or jury instructions." *Cintron*, 882 F.3d at 1385 (citing *Mathis*, 136 S. Ct. at 2256–57).

For instance, if one of these documents includes all the statutory alternatives or uses a "single umbrella term," then this indicates that the statute is indivisible. *Mathis*, 136 S. Ct. at 2257. On the other hand, "an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.*

*Mathis* also stated that "[o]f course, such record materials will not in every case speak plainly," although such "indeterminancy should prove more the exception than the rule." *Id.* Importantly, this Court has held that if these sources of state law "do not 'speak plainly,' [then we] must resolve the inquiry in favor of indivisibility." *Cintron*, 882 F.3d at 1385 (citing *Mathis*, 136 S. Ct. at 2257). With this framework in mind, we examine these sources of state law to determine whether Georgia's terroristic-threats statute contains alternatively listed elements or means and, therefore, whether it is divisible.

## C. Applicability of *Greer I*

Before we analyze § 16-11-37(a) under *Mathis*, we address the government's argument that this case is controlled by *Greer I*. In that case, we held that a determination of whether a Georgia terroristic-threats conviction qualifies as a violent felony under the ACCA is a question for the district court judge, not the jury. The government contends that we already decided in *Greer I*

9

that a Georgia terroristic-threats conviction qualifies as an ACCA predicate offense. But because that was not our holding in *Greer I*, we conclude that it does not control this appeal.

In *Greer I*, we determined that the district court erred by refusing to impose an enhanced sentence under the ACCA based on its determination that "if anything beyond the conviction itself and the statutory elements had to be considered in making the violent crime finding, the Constitution requires that the jury make it." 440 F.3d at 1273. We held that determining the nature of a prior conviction for ACCA purposes was a determination for a judge, not a jury, to make. *Id.* at 1275. To be sure, *Greer I* stated that "there was no real dispute" in the case as to whether Greer's indictments "proved that [his] three prior convictions were crimes of violence under the ACCA." *Id.* at 1273. However, in reaching our conclusion that this determination rests with the district court judge, we relied on the district court's characterization of the defendant's terroristic-threats convictions as violent felonies. *See id.* at 1273–74. And because the defendant in *Greer I* did not challenge this determination, we had no occasion to consider the issue further. Moreover, *Greer I*'s discussion about the substance of the ACCA determination was tangential to the primary issue in the case—specifically, if a district court judge, instead of a jury, can decide whether a defendant's prior conviction is an ACCA predicate offense. *See id.* at 1273; *see also Aqua Log, Inc. v. Lost &*

10

*Abandoned Pre-Cut Logs & Rafts of Logs*, 709 F.3d 1055, 1060 n.4 (11th Cir. 2013) ("A holding is both the result of the case and those portions of the opinion necessary to that result." (internal quotation mark omitted)).

Thus, we did not decide in *Greer I* the divisibility of Georgia's terroristic-threats statute. Further, *Greer I* did not explicitly address whether a Georgia terroristic-threats conviction qualifies as a violent felony under the ACCA's enumerated-offense clause, elements clause, or residual clause.[2] Therefore, we find that *Greer I* does not control here.[3]

---

[2] *Greer I* was decided prior to *Johnson v. United States*, 135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court struck down as unconstitutionally vague the ACCA's "residual clause," which defined a violent felony, in part, as any crime punishable by a term of imprisonment exceeding one year that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* at 2555–58; 18 U.S.C. § 924(e)(2)(B)(ii). Several other Supreme Court cases with precedential value in the ACCA context were also decided after *Greer I*, including *Descamps* and *Mathis*.

[3] The defendant in *Greer I* recently appealed the district court's denial of his 28 U.S.C. § 2255 motion to correct his sentence. *See Greer v. United States* (*Greer II*), 749 F. App'x 887 (11th Cir. 2018) (unpublished). He argued that his sentence under the ACCA was invalid because his prior Georgia terroristic-threats convictions did not qualify as violent felonies. *Id.* at 888. Because the parties agreed that the Georgia statute was divisible, we assumed the statute was divisible, but did not decide the question. *Id.* at 892. We concluded that only threatened violent force is criminalized under the "crime of violence" prong of Georgia's terroristic-threats statute. *Id.* at 894–95. The defendant's three prior terroristic-threats convictions therefore qualified as violent felonies under the ACCA's elements clause. *Id.* at 895. Like *Greer I*, we decline to give *Greer II* controlling weight. *Greer II* is an unpublished decision and is not binding on our merits panel. Moreover, *Greer II* leaves open the question of whether Georgia's terroristic-threats statute is divisible, which is an essential determination in this case.

11

### D. Divisibility of Georgia's Terroristic-Threats Statute

Returning to the framework set forth in *Mathis*, we now consider whether

Georgia's terroristic-threats statute, § 16-11-37(a), is divisible. At the time of

Oliver's conviction, Georgia's terroristic-threat statute provided:

> A person commits the offense of a terroristic threat when
> he or she threatens to commit any crime of violence, to
> release any hazardous substance, as such term is defined
> in [O.C.G.A. §] 12-8-92, or to burn or damage property
> with the purpose of terrorizing another or of causing the
> evacuation of a building, place of assembly, or facility of
> public transportation or otherwise causing serious public
> inconvenience or in reckless disregard of the risk of
> causing such terror or inconvenience. No person shall be
> convicted under this subsection on the uncorroborated
> testimony of the party to whom the threat is
> communicated.

O.C.G.A. § 16-11-37(a) (2010). Thus, the statute lists three types of threats that

qualify as a violation of the statute: (1) threats "to commit any crime of violence,"

(2) threats "to release any hazardous substance," and (3) threats "to burn or

damage property." *Id.*

It is clear from the face of the statute that not all threats criminalized by the

statute require the "threatened use of physical force against the person of another,"

as is required to satisfy the ACCA's elements clause. *See* 18 U.S.C.

§ 924(e)(2)(B)(i). Specifically, the statutory phrase criminalizing a threat "to burn

or damage property" lacks any requirement of physical force against a person.

12

Thus, if the alternatively listed threats in § 16-11-37(a) are means, and therefore the statute is indivisible, then a conviction under the statute cannot serve as a predicate violent felony under the ACCA. *See Cintron*, 882 F.3d at 1384.

The government therefore urges us to conclude that the Georgia statute is divisible, requiring application of the modified categorical approach. The government contends that the statute contains divisible threat *elements*, and that the type of threat underlying Oliver's conviction—a threat to "commit any crime of violence"—always contains an element of threatened violent force against another. However, because we conclude that the statute is indivisible, we disagree.

As explained above, *Mathis* instructs us to first look to authoritative state law—the statute itself and state decisional law—to determine whether a statute refers to elements or means. Here, we cannot resolve this question based solely on the text of the statute. First, § 16-11-37(a) lacks the clarifying traits described in *Mathis* as dispositive. The statute does not assign different punishments to the different types of threats, it does not offer illustrative examples of any of the threats, and it does not "identify which things must be charged (and so are elements) and which need not be (and so are means)." *See Mathis*, 136 S. Ct. at 2256; O.C.G.A. § 16-11-37(a). Further, the statute facially suggests indivisibility: it contains "language indicating that the . . . methods of commission are to be treated as a single offense," a fact that we have explained weighs in favor of

13

indivisibility.  *Cintron*, 882 F.3d at 1387; *see* O.C.G.A. § 16-11-37(a) ("A person commits *the offense* of a terroristic threat . . . ."  (emphasis added)).[4]  Accordingly, the language of the statute does not "speak plainly" to whether the statute's alternatives are elements or means, so we proceed to consider state case law.  *See Mathis*, 136 S. Ct. at 2256–57; *Cintron*, 882 F.3d at 1385.

Similarly, Georgia's state court decisions are not dispositive.  In *Mathis*, the Supreme Court explained that a state court decision sufficiently resolved the divisibility inquiry when it (1) described statutory alternatives as "alternative method[s] of committing the single crime of burglary" and (2) clarified that a jury need not unanimously agree on the particular method the defendant used.  *Mathis*, 136 S. Ct. at 2250, 2256 (alteration adopted) (internal quotation mark omitted).

---

[4] The dissent argues that the structure of the terroristic-threats statute indicates divisibility.  Dissenting Op. at 25.  Respectfully, we disagree.  The dissent correctly notes that we determined in *Davis* that a sexual-abuse statute, which contained an exhaustive list, rather than illustrative examples, and referred to "*the crime* of sexual abuse," was nonetheless divisible.  *Davis*, 875 F.3d at 598 (emphasis added).  However, the format of that statute more clearly indicated divisibility, *see* Ala. Code § 13A-6-66(a), and, moreover, our opinion offered little reasoning or guidance as we merely stated "[o]n its face § 13A-6-66(a) lists two separate crimes: sexual abuse by forcible compulsion and sexual abuse of a person incapable of consent by reason of being physically helpless or mentally incapacitated."  *Davis*, 875 F.3d at 598.

Furthermore, we have held that a statute that punishes an individual who "knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of" certain narcotics is indivisible because these various acts are "denominated as a single offense—'trafficking in illegal drugs.'"  *Cintron*, 882 F.3d at 1385–86.  We concluded that this "suggest[ed] that the six listed alternatives were all means of accomplishing 'trafficking,' rather than separate elements creating distinct offenses."  *Id.* at 1386.  The same reasoning is persuasive in interpreting § 16-11-37(a).

14

Here, Georgia case law is inconclusive as to whether the statute describes elements or means. To be sure, Georgia appellate decisions appear to suggest that § 16-11-37(a) describes a single offense that may be committed in several ways. *See Koldewey v. State*, 714 S.E.2d 371, 373 (Ga. Ct. App. 2011) ("To prove the crime of terroristic threats as alleged in Counts 1 through 4, the State's burden was to show that Koldewey 'threaten[ed] to commit any crime of violence . . . or to burn or damage property . . . .'" (quoting O.C.G.A. § 16-11-37(a))); *Armour v. State*, 594 S.E.2d 765, 767 (Ga. Ct. App. 2004) ("A person commits the crime of making a terroristic threat when he threatens to commit any crime of violence or to burn or damage property . . . ."). By referring to making terroristic threats as a single offense that could be committed in more than one way, Georgia case law suggests that the listed types of threats are alternative "means of satisfying the *actus reus* element of [the] offense." *Schad v. Arizona*, 501 U.S. 624, 632 (1991) (plurality opinion); *see* Robert E. Cleary Jr., *Kurtz Criminal Offenses and Defenses in Georgia* 1751 (2011 ed.) ("The actus reus of the crime of terroristic threats is threatening to commit any crime of violence, to release any hazardous substance, or to burn or damage property."). However, no Georgia appellate decision has

15

"definitively answer[ed] the question"—"elements or means?"—with the certainty

described in *Mathis*. *See* 136 S. Ct. at 2256.[5]

---

[5] The dissent makes three arguments why Georgia case law conclusively shows that the statute is divisible. Respectfully, we disagree with each.

First, the dissent says that relevant cases show that Georgia prosecutors routinely charge defendants with separate crimes under the terroristic-threats statute. Dissenting Op. at 27–28. The dissent states that the indictments in these cases reference one term—usually, threatening to commit a crime of violence—to the exclusion of all other terms, thus suggesting that the statute contains elements, not means. This analysis misapplies the *Mathis* framework. *Mathis* tells us to look to state case law in the elements-or-means inquiry to see if a state court decision "definitively answers the question," such as by clearly holding that a statute contains "alternative methods of committing one offense." *Mathis*, 136 S. Ct. at 2256 (alteration accepted) (internal quotation mark omitted). *Mathis* also tells us we may also look to the record of conviction, including the indictment, in the case at hand. *Id.* at 2256–57. But *Mathis* does not direct us to consider the indictments in other cases, when those cases have not considered what a prosecutor must charge in the indictment, or what the jury must find. *See id.*

It is worth mentioning that in *United States v. Gundy*, where we held that Georgia's burglary statute listed separate elements, not means, we noted that, "[i]ndeed, in every case cited by Gundy and the government, the indictment specified the type of place or premises burgled." 842 F.3d 1156, 1167 (11th Cir. 2016). However, our analysis of state case law rested on the definitive rulings in state cases as to what must be charged and, more significantly, proved to obtain a conviction for Georgia burglary, in accordance with the *Mathis* framework. *See id.* at 1167 (citing cases). We did not rely on the indictments *in other cases* cited by Gundy and the government to decide that the statute was divisible.

Second, the dissent says that Georgia courts have long acknowledged that the various actus rei and mentes reae under the terroristic-threats statute are in fact elements. Dissenting Op. at 29. The cases the dissent cites all explain that there are *two essential elements* of the offense. We agree. This fact, though, merely begs the question whether the actus reus alternatives are means or alternative elements. The cases the dissent cites do not answer this question. The dissent argues that Georgia's cases "stand in stark contrast to the Iowa cases that *Mathis* considered, which consistently described Iowa's burglary law as one offering 'alternative method[s]' of committing a single offense." *Id.* at 30 (quoting *Mathis*, 136 S. Ct. at 2256). True, but this is because the case law from Iowa squarely addressed the issue, which the Georgia cases do not.

Third, the dissent criticizes our reliance on *Koldewey* and *Armour*. The dissent says that these cases "colloquially" refer to a singular crime of terroristic threats. *Id.* at 31. We do not find insignificant a court's reference to a singular "crime" when the statute it is analyzing expressly refers to a singular "offense," as is the case here. *See* O.C.G.A. § 16-11-37(a). Our

16

Because these sources of state law do not clearly resolve whether the types of threats are means or elements, we may "peek" at the record of Oliver's prior conviction, including the "indictment and correlative jury instructions." *Id.* at 2256–57. The pattern jury instruction for § 16-11-37(a) reads:

> A person commits terroristic threats when that person threatens to (commit any crime of violence) (release any hazardous substance) (burn/damage property) with the purpose of
>
> (a) (terrorizing another) (in reckless disregard of the risk of causing terror), or
>
> (b) (causing evacuation of a building, place of assembly, facility of public transportation), or
>
> (c) (causing serious public inconvenience) (in reckless disregard of the risk of causing serious public inconvenience)[.]

Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 2.24.10 (4th ed. 2018).[6] Given the instruction's format,

---

dissenting colleague also argues that these cases support his view of the statute, not ours, because those cases involved separate counts of terroristic threats. We disagree. As a technical matter, *Armour* involved only one count of terroristic threats. The court mentioned in passing that "the evidence would have supported a terroristic threat charge" based on the defendant's threat to beat up a person, "but the indictment charged Armour only" with a count based on his threat to burn the person's residence. *Armour*, 594 S.E.2d at 767 & n.4. In any event, nothing prevents a prosecutor from charging multiple counts of terroristic threats for different threats. That happens all the time. And it is what happened in these cases.

[6] The version of this jury instruction at the time of Oliver's conviction was the same, except that it omitted, apparently inadvertently, "release any hazardous substance," although that alternative was part of § 16-11-37(a) at the time.

17

we cannot conclusively say that it either lists a single statutory alternative to the exclusion of all others or lists every statutory alternative. Rather, the instruction appears to be a template for an instructing court to tailor to the facts of a case. The way in which the three threats are alternatively listed may at first suggest that they are separate elements, but then the same interpretation does not fit for the alternatively listed mens rea requirements that follow in subsections (a) through (c). Indeed, it does not make sense to interpret each alternatively listed mens rea requirement as a distinct element.

We could also look to Oliver's indictment, but, as the government concedes, that indictment is not part of the record. The government points to Oliver's PSI, which refers to the indictment in Oliver's terroristic-threats case and states that it charged Oliver solely with threatening a crime of violence. But such reference to an indictment that is not part of the record does not squarely fit within the *Mathis* framework. *See Mathis*, 136 S. Ct. 2243, 2256–57. Even if *Mathis* permits us to peek at the language in Oliver's indictment, it is inconclusive, as it does not by necessity mean that the term is an element. *See id.* at 2257 ("[A]n indictment and jury instructions *could* indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements . . . ." (emphasis added)). Regardless, without more than this reference to the indictment, we cannot conclude that Oliver's record of conviction clearly indicates divisibility.

18

*Contra United States v. Gillis*, 938 F.3d 1181, 1205 (11th Cir. 2019) (per curiam) ("Because all of the information before us points in the same direction, we have no trouble concluding that § 1201(a) is indivisible and that the categorical, rather than the modified categorical, approach applies.").

Accordingly, because the statute's text, state case law, and the record of conviction do not "speak plainly" as to whether the statute is divisible, we "must resolve the inquiry in favor of indivisibility." *Cintron*, 882 F.3d at 1385. And because the statute is indivisible and it is overbroad, we conclude that it categorically does not qualify as an ACCA predicate offense. As such, Oliver does not have three qualifying predicate offenses under the ACCA. Therefore, we reverse the district court's application of the ACCA enhancement and remand to the district court to resentence Oliver without the enhancement.

**REVERSED AND REMANDED.**

TALLMAN, Circuit Judge, dissenting.

Najee Oliver was convicted of being a felon in possession of a firearm. Having previously been convicted of two serious drug offenses and of making "terroristic threats" under Georgia state law—for threatening to shoot his then-girlfriend and making good on the threat by showing up at her house and firing a round—Oliver's sentence was properly enhanced under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i).  The majority today reverses that enhancement.  Because I would find that Oliver's terroristic-threats conviction qualifies as a violent felony under the ACCA, I respectfully dissent.

I

The majority ably summarizes both our ACCA jurisprudence and the facts of this case.  *See* Maj. Op. at 2–7.  I agree that we are bound to follow the so-called categorical approach to determine whether state offenses qualify as violent felonies under the ACCA—that is, regardless of the actual facts of the case, we must decide if "the least of the acts criminalized [by the statute of conviction] includes the use, attempted use, or threatened use of physical force against another person." *United States v. Davis*, 875 F.3d 592, 597 (11th Cir. 2017).  I agree that the Georgia terroristic-threats statute, O.C.G.A. § 16-11-37(a)[1] criminalizes some conduct that

---

[1] While Oliver was convicted under an earlier version of the statute, the former and revised versions are identical in all material respects.

is unquestionably outside the ACCA's ambit, such as its prohibition on "burn[ing] or damag[ing] property."  The question before us is (1) whether the statute is divisible, and, if so, (2) whether the crime for which Oliver was convicted is categorically a violent felony under the ACCA.[2]  Because Oliver's case is emblematic of the type of crime for which Congress sought to enhance a recidivist's punishment, I would answer "yes" to both questions and affirm the district court.

## II

At the time Oliver was convicted, § 16-11-37(a) of the Georgia Code read in relevant part:

> A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence, to release any hazardous substance . . . or to burn or damage property with the purpose of terrorizing another or of causing the evacuation of a building, place of assembly, or facility of public transportation or otherwise causing serious public inconvenience or in reckless disregard of the risk of causing such terror or inconvenience.

O.C.G.A. § 16-11-37(a) (2010).  Because none of the crimes included in this statute are enumerated in 18 U.S.C. § 924(e)(2)(B)(ii) (the "enumerated offenses clause"), the conviction only qualifies as a predicate offense under the ACCA if it

---

[2] I agree with the majority that *United States v. Greer*, 440 F.3d 1267 (11th Cir. 2006), does not control our decision here.

"has as an element the use, attempted use, or threatened use of physical force against the person of another," *id.* at § 924(e)(2)(B)(i) (the "elements clause").

Applying the categorical approach to the statute as a whole, it is plain that a person could be convicted for conduct other than a violent felony. For example, a threat to burn an office building does not qualify as a violent felony under the elements clause because it does not entail physical force against the person of another. But, as the Supreme Court noted in *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016), "a single statute may list elements in the alternative, and thereby define multiple crimes." In such situations, we must determine if a statute's distinct parts are "elements"—and that the statute "thereby define[s] multiple crimes"—or "means"—in which case the statute contains "a diverse means of satisfying a single element of a single crime." *Id.* Determining a statute's divisibility entails, as the majority aptly outlines, "consult[ing] 'authoritative sources of state law,' including the language of the statute itself, pertinent state court decisions, and—if state law fails to provide clear answers— record documents from the defendant's own prior conviction." Maj. Op. at 7–8 (quoting *Mathis*, 136 S. Ct. at 2256).

Only after we have determined that a statute is divisible may we employ the "modified categorical approach," looking "to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to

determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249. Finally, we must determine whether the crime for which the defendant was convicted is categorically a violent felony. *See Davis*, 875 F.3d at 600.

A

The three factors we examine in assessing divisibility—the statute, the state case law, and the record documents of the defendant's prior conviction—together paint a picture about whether a statute is divisible. They serve as guideposts to help us distinguish means from elements, which are "[a]t a trial, what the jury must find beyond a reasonable doubt to convict the defendant, . . . and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." *Mathis*, 136 S. Ct. at 2248.

The language of the Georgia statute in question, Georgia state-court decisions, and Oliver's conviction record collectively demonstrate that § 16-11-37(a) is divisible. The statute sets forth an exhaustive list that bears no resemblance to *Mathis*'s indivisible statute. The Georgia courts *call* § 16-11-37(a)'s parts *elements*, and they make clear that prosecutors must prove the particular threat alleged. And the indictment to which Oliver pleaded guilty charged him with threatening a crime of personal violence *only*—not for a

generalized "terroristic threat" that could encompass any of the three kinds of threats that compose the statute.

## B

In *Mathis*, the Supreme Court observed that in some cases "the statute on its face may resolve the [divisibility] issue." 136 S. Ct. at 2256. *Mathis* provides a few helpful hints to divine whether a statute's parts are elements or means. First, it tells us that "[i]f statutory alternatives carry different punishments, then . . . they must be elements." *Id.* Second, "if a statutory list is drafted to offer 'illustrative examples,' then it includes only a crime's means of commission." *Id.*

Section 16-11-37(a) is divided into three parts. It criminalizes three separate acts—threatening to (1) commit any crime of violence; (2) release any hazardous substance; or (3) burn or damage property—committed with four separate *mentes reae*: (1) terrorizing another; (2) causing the evacuation of a building, place of assembly, or facility of public transportation; (3) otherwise causing serious public inconvenience; or (4) in reckless disregard of the risk of causing such terror or inconvenience. *See* O.C.G.A. § 16-11-37(a). Admittedly, the statute carries no separate punishments, so that version of the means-or-elements test might initially suggest indivisibility.

But neither does the statute offer illustrative examples. It is therefore not like the type of statute *Mathis* told us indicates "means" rather than "elements."

24

*United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014), provides a good example of an indivisible statute.  It criminalizes unlawful entry into "structures"—where that term is defined by a long list beginning with the phrase "and such term includes"—which, we held, denoted means, not elements.  By contrast, the statute in *Davis*, which criminalizes two types of sexual assault—one violent; one of an incapacitated or disabled person—lists elements.  875 F.3d at 598.  Our statute's exhaustive list looks much more like the statute in *Davis* than the one in *Howard*.  Rather than providing a laundry list of various ways in which a person may commit a single crime, like the statute in *Howard*, § 16-11-37(a) provides three distinct ways in which a defendant may violate its terms.  Its structure indicates that it creates three separate crimes with different elements—not a single crime with sundry means of commission.

While I think the structure of the statute is an indication of divisibility, the majority would have the reader disregard the statutory structure and instead rely on the portion of § 16-11-37(a) referring to "the offense"—in the singular—of a terroristic threat.  *See* Maj. Op. at 13–14.  The majority leans on *Cintron v. U.S. Attorney Gen.*, 882 F.3d 1380, 1387 (11th Cir. 2018), to support its claim that a statute's referring to "the offense" is an indication that the statute's parts are means, not elements.  *See* Maj. Op. at 13–14.  And the majority dismisses *Davis*'s contrary holding out of hand—in a footnote—because "our opinion [in *Davis*]

25

offered little reasoning or guidance." *Id.* at 14 n.4.  I would not so lightly discard one of our precedential opinions.  True:  it is difficult to reconcile *Davis* and *Cintron* with regard to how they grapple with their respective statutes' nomenclature for the crimes they proscribe.  But *Davis* remains good law, and the majority is thus wrong to count the statute's terminology as among the factors "suggest[ing] indivisibility."[3]  Maj. Op. at 13.

Section 16-11-37(a)'s structure—like the *Davis* statute's—indicates that it is divisible.  Its reference to "the crime" of terroristic threats—like *Davis*'s, to the crime of sexual assault—does nothing to call that indication into question.

C

While I think § 16-11-37(a)'s structure favors finding it divisible, I nonetheless grant that the statute's text leaves its divisibility open for debate, so I turn to the next factor *Mathis* tells us to examine:  state-court decisions interpreting the statute.  Precedential state-court decisions serve as strong evidence that the statute's *actus rei*—threatening to commit a crime of violence, threatening to release any hazardous substance, or threatening to burn or damage property—are "elements" one or more of which "the jury must find beyond a reasonable doubt"

---

[3] It may very well be that the statute in *Cintron* indicated indivisibility by referring to its laundry list of six kinds of drug crimes as "the offense."  *See* 882 F.3d at 1385–86.  But such terminology does not *always and necessarily* so indicate, as *Davis* makes clear.  And § 16-11-37(a)'s three nonoverlapping parts bear much greater resemblance to the two-part, divisible sexual-assault statute in *Davis*, *see* 875 F.3d at 598, than to *Cintron*'s six-part litany, *see* 882 F.3d at 1385.

in order to convict, *Mathis*, 136 S. Ct. at 2248, depending on the crime charged, as opposed to "alternative methods" of committing one crime on which "a jury need not agree," *id.* at 2256.

An examination of the relevant cases reveals that Georgia prosecutors routinely charge defendants with separate crimes—requiring proof on different combinations of elements—under the terroristic-threats statute. The most commonly prosecuted crime appears to be threatening to commit a crime of violence with the purpose of terrorizing another. The indictments in all of the terroristic-threats cases "referenc[e] one alternative term" (threatening to commit a crime of violence) "to the exclusion of all others" (threatening to release any hazardous substance, or to burn or damage property), which tends to show the terroristic-threats statute "contains a list of *elements*, each one of which goes toward a *separate crime*." *Mathis*, 136 S. Ct. at 2257 (emphases added).

Indictments so framed pervade Georgia case law. *See, e.g.*, *Bryant v. State*, 832 S.E.2d 826, 830 (Ga. 2019) (indictment alleged defendant "threaten[ed] to commit Murder, a crime of violence, with the purpose of terrorizing" the victim); *Poole v. State*, 326 Ga. App. 243, 247, 756 S.E.2d 322, 328 (2014) (indictment charged three terroristic-threats counts, each of which "allege[d] that Poole, 'with the intent to terrorize,' threatened to commit a 'crime of violence' against a specific victim on a specific date or limited range of dates"); *Smith v. State*, 319

27

Ga. App. 640, 641, 738 S.E.2d 95, 96 (2013) (indictment "accused Smith of committing terroristic threats specifically by threatening to commit aggravated assault with the purpose of terrorizing the salon's owner and one of the customers"); *State v. Horsley*, 310 Ga. App. 324, 325, 714 S.E.2d 1, 2 (2011) (indictment charged defendants with "threaten[ing] to commit a crime of violence, to wit: murder with the purpose of terrorizing Sir Elton Hercules John"); *Martin v. State*, 303 Ga. App. 117, 119, 692 S.E.2d 741, 743 (2010) (indictment charged defendant with threatening to commit "a crime of violence, to wit: murder upon the person of Barbara Hightower"); *Martin v. State*, 219 Ga. App. 277, 283, 464 S.E.2d 872, 878 (1995) (indictment charged defendant with "threaten[ing] to commit a crime of violence with the purpose of terrorizing another").

The indictments set forth above list only those elements relevant to the specific crime charged—one regarding the defendant's *actus reus* (threatening to commit a crime of violence), the other regarding his or her *mens rea* (with the purpose of terrorizing another). To convict a defendant, the jury must decide that the state has proven both elements beyond a reasonable doubt. *See, e.g.*, *Martin*, 303 Ga. App. at 119, 692 S.E.2d at 743 (finding the state presented "ample evidence to allow the jury to find the[] elements [of threatening a crime of violence, with the purpose of terrorizing another] beyond a reasonable doubt").

28

The same principles apply in other cases for different crimes charged under the terroristic-threats statute.  For instance, an indictment alleging a defendant committed the crime of threatening to burn down a victim's house will be charged only under the burn-or-damage element of § 16-11-37(a), to the exclusion of the other two *actus reus* elements.  *See Armour v. State*, 265 Ga. App. 569, 571 n.4, 594 S.E.2d 765, 767 n.4 (2004).  The jury in a burn-or-damage case is tasked with considering only whether the government has carried its burden in proving the defendant threatened to burn or damage property with a criminal purpose.  *See Robinson v. State*, 288 Ga. App. 219, 221, 653 S.E.2d 810, 813 (2007) (finding evidence sufficient to support defendant's conviction for threatening to burn down a restaurant); *see also Masson v. Slaton*, 320 F. Supp. 669, 672–73 (N.D. Ga. 1970) (explaining that, to charge a defendant under the terroristic-threats statute, "the court need only consider that portion of the statute under which the plaintiff was indicted"—the part criminalizing the threat "to burn or damage property, with the purpose of terrorizing another").

Just as Georgia *prosecutors* charge defendants with separate crimes under the statute's elements, and *jurors* decide whether the prosecutors proved those elements, Georgia *courts* have long acknowledged the *actus rei* and *mentes reae* are "elements" giving rise to separate crimes.  *See Bryant*, 832 S.E.2d at 830–31 (explaining that, under § 16-11-37(a), "the State must establish *two elements* to

29

sustain a conviction for making terroristic threats: (a) that the defendant threatened to commit a crime of violence against the victim, and (b) that the defendant did so with the purpose of terrorizing the victim" (internal quotation marks and citation omitted) (emphasis added)); *Clement v. State*, 309 Ga. App. 376, 379, 710 S.E.2d 590, 592 (2011) (same); *Poole*, 326 Ga. App. at 249, 756 S.E.2d at 329 ("[T]he *essential elements* of the crime of terroristic threats are a threat to commit a crime of violence with the purpose of terrorizing another." (emphasis added)); *Smith*, 319 Ga. App. at 641, 738 S.E.2d at 96 ("[T]he State was required to prove *two essential elements*: (1) that Smith threatened the victims with aggravated assault and (2) that he acted with the purpose of terrorizing them." (emphasis added)); *Martin*, 303 Ga. App. at 119, 692 S.E.2d at 743 ("[T]he State was required to prove *two elements*: (1) that Martin threatened to murder Barbara and (2) he did so with the purpose of terrorizing her." (emphasis added)); *Martin*, 219 Ga. App. at 283, 464 S.E.2d at 878 ("The *essential elements* of terroristic threats and acts are: (1) a threat to commit any crime of violence . . . (2) . . . with the purpose of terrorizing another." (emphasis added) (omissions in original)).

These Georgia decisions stand in stark contrast to the Iowa cases that *Mathis* considered, which consistently described Iowa's burglary law as one offering "alternative method[s]" of committing a single offense. 136 S. Ct. at 2256 (finding that an Iowa state-court decision describing Iowa's burglary law component parts

as "alternative method[s]" thereby "definitively" established that the law comprised means, not elements).

The majority offers two state-court decisions to cast doubt on whether the balance of Georgia cases accurately treats the terroristic-threats statute's component parts as "elements." *See* Maj. Op. at 15. In both decisions cited by the majority, the courts colloquially refer to "the crime," in the singular, "of terroristic threats." They say things like, "[t]o prove the crime of terroristic threats . . . the State's burden was to show that Koldewey 'threaten[ed] to commit any crime of violence . . . or to burn or damage property[.]'" *Koldewey v. State*, 310 Ga. App. 788, 789, 714 S.E.2d 371, 373 (2011). *See also Armour*, 265 Ga. App. at 571, 594 S.E.2d at 767 ("A person commits the crime of making a terroristic threat when he threatens to commit any crime of violence or to burn or damage property[.]"). I disagree that the majority's interpretation of these quotations is the only reasonable one, but taken out of context, they might suggest that threatening to commit a crime of violence and threatening to burn or damage property are alternative means of committing the single crime of terroristic threats. But the majority neglects to mention that the indictments underlying both cases charge the defendants with *separate crimes*, all under the terroristic-threats statute, and as *separate counts*.

In *Koldewey*, for instance, the prosecution charged the defendant in a six-count indictment that included two counts for threatening to kill victim A.W. on

31

two separate occasions, another count for threatening to kill victim C.W., and an additional count for threatening to set fire to a home.  310 Ga. App. at 788–89, 714 S.E.2d at 372–73.  The *Koldewey* indictment presented three charges for two separate crimes, all under the terroristic-threats statute: (1) two counts of threatening to commit a crime of violence, and (2) one count of threatening to burn or damage property.  The facts of *Koldewey* make clear that each count contained different elements the prosecution had to prove to establish the defendant committed the separate *crimes* which the statute proscribes.

The *Armour* defendant was charged solely with the single crime of threatening to burn down a house.  265 Ga. App. at 571 n.4, 594 S.E.2d at 767 n.4. The court proceeded to analyze only that element of the terroristic-threats statute, to the exclusion of all others, while acknowledging the defendant's other conduct might also have supported a separate charge under a separate statutory element (a threat to commit a crime of violence), though the prosecution did not charge him with the other offense.  *Id.*

Significantly, neither the prosecution in *Koldewey* nor in *Armour* (nor in any other Georgia case that I could find) sought to charge the defendants with a generalized "terroristic-threats crime."  *Cf. Mathis*, 136 S. Ct. at 2257 (explaining that where one count of an indictment reiterates *all* the terms of a state's law, "[t]hat is as clear an indication as any that each alternative is only a possible means

32

of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt"). The indictments in these Georgia cases instead accused the defendants of specific crimes, each requiring proof on unique elements, which the state was obligated to prove in order to convict. Georgia precedent is clear and directly answers the question, posed by the majority, "whether the actus reus [and mens rea] alternatives" of § 16-11-37(a) "are means or alternative elements," Maj. Op. at 16 n.5: threatening to commit a crime of violence against another, threatening to release a hazardous substance, and threatening to burn or damage property are elements, not means. The terroristic-threats statute is divisible.

Facing this overwhelming body of Georgia law, and with but two cases that only superficially support its argument, the majority throws up its hands and declares the Georgia case law useless as a guide to § 16-11-37(a)'s divisibility. It so argues based on an unsupported and internally inconsistent reading of *Mathis*. The majority insists that state-court decisions make clear a statute is divisible *only if* they explicitly state that a statute's component parts are "means" or "elements." Maj. Op. at 16 n.5. But *Mathis* does not require state courts to utter any talismanic words before we can find divisibility in the ACCA context. The Supreme Court in *Mathis*, apparently cognizant that such state-court incantations would be rare, permitted lower courts to rely on a suite of factors to be examined in employing the modified categorical approach, which are "*indication*[*s*]" that *bear on* the ultimate

33

determination of divisibility, whether or not they definitively dispose of it. 136 S. Ct. at 2256–57 (emphasis added). One "indicator," which we have expressly relied on in concluding a Georgia statute was divisible, is the form of an indictment. Indeed, where a Georgia prosecutor must select and identify the component parts of a statute to charge in an indictment, such "is the hallmark of a divisible statute." *United States v. Gundy*, 842 F.3d 1156, 1167 (11th Cir. 2016) (concluding burglary statute was divisible).[4]

Only a few pages after insisting that *Mathis* gives rise to a rigid analytical framework—one that would require courts to cast a blind eye to clear trends in state case law directly bearing on the divisibility question—the majority changes its tune, insisting that a defendant's previous indictment merely "*could* indicate" divisibility but, inexplicably, ultimately declining to follow *Mathis* on that issue. The majority cannot have it both ways. The *Mathis* framework either is a strict test to be mechanically applied (as the majority disingenuously implies with regard to

---

[4] I do not understand why the majority relies on *Gundy* to establish that federal courts must rely on "definitive rulings in state cases as to what must be charged and proved to obtain a conviction." Maj. Op. at 16 n.5. The majority claims that in *Gundy* we relied only on definitive state-court rulings, and that we specifically did not "rely on the indictments in *other cases* cited by Gundy and the government to decide that the statute was divisible." *Id.* But the plain text of *Gundy* directly contradicts the majority's argument. *Gundy* expressly acknowledged that, "in *every case cited by Gundy and the government*, the indictment specified the type of place or premises burgled," thus supporting divisibility. 842 F.3d at 1167 (emphasis added). We then concluded that, based on the indictments underlying the parties' cases, combined with definitive state-court rulings, the Georgia statute at issue was divisible. *Id.* at 1168 ("*For all of the above reasons*, we conclude that the alternative locational elements in the Georgia statute are divisible.") (emphasis added). *Gundy* simply does not support the majority's position here.

state-court decisions), or it is a useful roadmap to guide courts in undertaking the complicated divisibility question (as the majority later concedes). The *Mathis* framework, as correctly applied here, yields but one conclusion: Georgia case law—replete with references to "elements" and examples of different types of threats charged as alternative counts—provides a strong indication that § 16-11-37(a)'s parts are *elements*, and that the statute is therefore divisible.

D

Although we need not consider the record of Oliver's prior conviction under the modified categorical approach—because Georgia state decisions clarify that § 16-11-37(a) is divisible—I do note that the record supports the same conclusion. Most significantly, and in accordance with the previously mentioned cases, Oliver's indictment charged him exclusively under that portion of Georgia's statute criminalizing a "threat[] to commit any crime of violence . . . with the purpose of terrorizing another." By charging Oliver with that specific offense—to the exclusion of the crimes of threatening to release a hazardous substance and threatening to burn or damage property—his indictment further confirms the statute is divisible. *See Mathis*, 136 S. Ct. at 2257 ("[A]n indictment . . . could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.").

The majority's suggestion that, because the "indictment is not part of the record," we cannot consider its substance, makes no sense, particularly where both the United States' brief and Oliver's presentence report quote it in relevant part. Maj. Op. at 18. The indictment may not be a part of the court "record" in the sense that neither party formally filed it with either the district court or our Court. But the indictment certainly is part of Oliver's "record of prior conviction," which *Mathis* expressly authorizes us to consider, *see* 136 S. Ct. at 2256–57, and which we have acknowledged is precisely the type of document subject to judicial notice, *see Francisco v. U.S. Attorney Gen.*, 884 F.3d 1120, 1123 n.2 (11th Cir. 2018) (acknowledging that, ordinarily, "the terms of the charging document" are "not in dispute and thus are subject to judicial notice"); *see also* Fed. R. Evid. 201(b)(2) (permitting courts to take judicial notice of facts not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned"). The clear rule authorizing us to consider Oliver's indictment perhaps explains the majority's awkward two-step, acknowledging the potential usefulness of the indictment immediately after disclaiming our ability to rely on it. Maj. Op. at 18 (the terms of an indictment "*could* indicate" divisibility). The majority deftly sidesteps the correct answer: the

indictment *does* indicate divisibility, and it is a clear sign that § 16-11-37(a)'s parts are elements.[5]

Considered together, the text of the statute, precedential state-court decisions, and Oliver's record of prior conviction lead to the ineluctable conclusion that the statute is divisible.

## III

Having found the statute divisible—and that Oliver was plainly charged under its crime-of-violence section—I would further conclude that the offense for which Oliver was convicted is a "violent felony" under the ACCA. 18 U.S.C. § 924(e)(1). The ACCA's elements clause defines a violent felony as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* at § 924(e)(2)(B)(i). This analysis is "categorical"—it entails no examination of the facts underlying Oliver's conviction. *See Mathis*, 136 S. Ct. at 2248 (the ACCA "cares not a whit about [such facts]"); *Davis*, 875 F.3d at 597. Rather, it requires us to scrutinize "the fact of conviction and the elements required for conviction." *Davis*, 875 F.3d at 597. If—and only if—"the least of the acts criminalized includes the use, attempted use, or threatened use of

---

[5] I agree with the majority that the Georgia pattern jury instruction for § 16-11-37(a) is inconclusive for our purposes. *See* Maj. Op. at 17–18.

physical force against another person" may the conviction qualify as a violent felony under the ACCA. *Id.* That is, *all possible violations* of the statutory phrase must involve force (or an attempt or threat of the same)—or else the violation cannot count as a predicate offense for ACCA purposes. *See id.* at 598.

That force must be more than mere harmless touching; it must be "*violent* force—that is, force capable of causing physical pain or injury to another person." *United States v. Johnson*, 559 U.S. 133, 140 (2010) (*Curtis Johnson*). And, as the preceding quotation makes clear, the force threatened must be against another person, not against property.

While the violation of a statute (or statutory phrase) that criminalizes nonviolent conduct cannot constitute a predicate offense under the ACCA, the mere *theoretical possibility* that a statute could be applied to nonviolent conduct will not serve to render all convictions under the statute unreachable under the ACCA. *See, e.g.*, *United States v. St. Hubert*, 909 F.3d 335, 350 (11th Cir. 2018) (rejecting appellant's contention that a Hobbs Act robbery—which requires "fear of injury"—could be committed without force because "a hypothetical nonviolent violation of the statute, without evidence of actual application of the statute to such conduct, is insufficient to show a realistic probability" that the statute could be violated without the use, attempted use, or threat of force (internal quotation marks and citation omitted)), *abrogated on other grounds by United States v. Davis*, 139

38

S. Ct. 2319 (2019).  This point was trenchantly established in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007), where the Supreme Court, applying the categorical analysis to the Immigration and Nationality Act's (INA) enumerated-offenses clause triggering removal, held that there must be "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside" the activity covered by the INA.  Absent concrete evidence of convictions under the violent-crimes portion of § 16-11-37(a) for nonviolent activity, I would hold that all convictions under that section are violent felonies for purposes of the ACCA.

## A

The relevant portion of Georgia's terroristic-threats statute criminalizes "threaten[ing] to commit any crime of violence . . . with the purpose of terrorizing another."  O.C.G.A. § 16-11-37(a).  The statute has a straightforward *actus reus*—threatening a crime of violence[6]—and an equally straightforward *mens rea*:  acting with the purpose of terrorizing another person.  The question for our purposes is whether *all possible violations* of the statute "includ[e] the use, attempted use, or threatened use of physical force against another person."  *Davis*, 875 F.3d at 597.

---

[6] Section 16-11-37(a) uses the phrase "crime of violence" instead of "physical force" in the ACCA.  That discrepancy is readily resolved:  *Curtis Johnson* tells us that when the ACCA says "physical force," it means "*violent* force."  559 U.S. at 140.  What is required under the ACCA, then, is that the predicate offense involve the threat of violent force.  The Georgia statute requires a threat of a crime of violence.  There is no daylight between those provisions.

Georgia courts are the ultimate expositor on Georgia state law. *See, e.g.*, *Howard*, 742 F.3d at 1346 ("[S]tate law is what the state supreme court says it is."). The Georgia courts read the statutory phrase at issue here to require two elements for conviction: "(a) that the defendant threatened to commit a crime of violence against the victim, and (b) that the defendant did so with the purpose of terrorizing the victim." *Bryant*, 832 S.E.2d at 831 (quoting *Clement*, 309 Ga. App. at 379, 710 S.E.2d at 592). While the term "crime of violence" could bear expounding, the Georgia courts instead insist on giving the phrase its ordinary meaning. *See, e.g.*, *Lanthrip v. State*, 235 Ga. 10, 11, 218 S.E.2d 771, 773 (1975) ("There are no hidden pitfalls or disguised traps into which the unwary may fall and commit the crime. The statute can be read and understood by a person of ordinary intelligence seeking to avoid its violation."); *Major v. State*, 301 Ga. 147, 152, 800 S.E.2d 348, 352 (2017) ("A person of ordinary intelligence can clearly understand the meaning of threatening to commit any crime of violence.").

So what is the ordinary meaning of "crime of violence"? "Violence" means "the use of physical force so as to injure, abuse, damage, or destroy." *Violence*, MERRIAM-WEBSTER (Dec. 4, 2019, 11:25:20 AM), https://www.merriam-webster.com/dictionary/violence. A threat of a crime of violence, then, is a threat to physically injure the victim.

The result is simple:  to find that a Georgia defendant in Oliver's shoes violated the violent-crimes portion of the terroristic-threats statute, the jury must find that he (1) threatened a crime of violence against another (2) with the purpose of terrorizing that person.  And a "crime of violence" is a crime involving the use of physical force.  By necessity, all convictions under this statutory phrase *must involve* a threat of physical force—precisely what is required under the ACCA.  Categorically, a person cannot be convicted under this part of the terroristic-threats statute unless he threatens violence.  It *really is* that simple.

## B

Oliver contends that a person "could violate this statute without using, attempting to use, or threatening to use force against another."[7]  But he describes no plausible scenario—and I can think of none—wherein a person could be convicted of "threatening to commit any crime of violence," O.C.G.A. § 16-11-

---

[7] Oliver relies on *Stewart v. United States*, No. 5:06-cr-00039-HL-CHW-1, 2017 WL 1407641, at *2 (M.D. Ga. Apr. 19, 2017), in which a federal district court adopted a magistrate judge's findings and recommendations that—because § 16-11-37(a) could support a conviction for threatening a simple battery, which itself is categorically not a violent felony, *see Curtis Johnson*, 559 U.S. at 139–40—the statute "includes means that do not involve the requisite level of force" under the ACCA "and is overbroad."  I think the *Stewart* court erred in analyzing not whether *§ 16-11-37(a)'s crimes* (terroristic threats) were "violent felonies," but instead focusing on whether the underlying *crime threatened* (i.e.., simple battery) was a "violent felony."  Under our categorical analysis, it does not matter whether the crime threatened is a violent one categorically.  What matters is that the *terroristic threat* is a violent one.  In *Shepherd v. State*, 230 Ga. App. 426, 496 S.E.2d 530 (1998), cited by the magistrate judge, the jury determined that the defendant had threatened to commit a simple battery in a violent manner.  That conduct allowed the defendant to be convicted under the crime-of-violence section of § 16-11-37(a), and likewise qualifies as a violent felony under the ACCA.

37(a), without "threaten[ing] . . . physical force against another person," 18 U.S.C. § 924(e)(2)(B)(i).

The key difference between those provisions—the absence of any language in the Georgia statute requiring that the threat of violence be directed *against a person*—appears at first to indicate a potential category of crimes covered by the Georgia statute that does not involve physical force against another person, namely the threat of a crime of violence against the property of another. Theoretically, a person could be charged with "threaten[ing] to commit any crime of violence . . . with the purpose of terrorizing another" for, say, threatening to slash his neighbor's tires. But that reading of the Georgia statute is wrong for two reasons.

First, Georgia courts read this statutory phrase to require that the threat be made against the victim. *See, e.g.*, *Bryant*, 832 S.E.2d at 831 (listing as an element of the terroristic-threats statute that the defendant "threatened to commit a crime of violence *against the victim*" (emphasis added)); *Clement*, 309 Ga. App. at 379, 710 S.E.2d at 592 (same). This is key: the Georgia Supreme Court holds that a person may not be convicted under the crime-of-violence section of § 16-11-37(a) unless the threat of a crime of violence is directed *toward another human*. *See Bryant*, 832 S.E.2d at 831. As construed by Georgia's highest legal authority, the statute simply does not allow a conviction for a threat of a crime of violence made against property. Georgia prosecutors have apparently caught the hint: my survey of

42

Georgia law uncovered not a single case in which a defendant was prosecuted under the crime-of-violence portion of § 16-11-37(a) for threatening violence against property.[8]  In the absence of any evidence of the statute's being used to prosecute threats of violence against property, I would abide by *St. Hubert*'s and *Duenas-Alvarez*'s admonition not to engage in imaginative speculation about its potential uses.  *See St. Hubert*, 909 F.3d at 350; *Duenas-Alvarez*, 549 U.S. at 193.

Second, reading the crime-of-violence section of § 16-11-37(a) to include threats of crimes against property (e.g., window smashing or tire slashing) would render superfluous the statute's burn-or-damage section.  There is a strong presumption against reading a statutory provision in such a way as to make another portion of the same statute superfluous.  *See Corley v. United States*, 556 U.S. 303, 314 (2009) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (internal quotation marks and citation omitted)); *In re Daughtrey*, 896 F.3d 1255, 1276 n.51 (11th Cir. 2018) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." (internal quotation marks and citation omitted)).  If threatening to commit a crime of violence against property is sufficient to be convicted under the

---

[8] The United States provides a comprehensive list of Georgia prosecutions under the statute in the appendix to its brief.  It shows the same:  there are no prosecutions for threatening violence against property under the portion of § 16-11-37(a) relevant here.

43

crime-of-violence section, the burn-or-damage section serves no purpose. Any threat to commit a crime of violence against property is—necessarily—a threat to damage that property.

Taken together, the Georgia courts' interpretation of the terroristic-threats statute and the presumption against superfluity counsel strongly in favor of reading "threatens to commit any crime of violence" as criminalizing only threats of violence against another person. Any conviction under the crime-of-violence section of § 16-11-37(a) therefore constitutes "threaten[ing] . . . physical force against the person of another" as contemplated in the ACCA's elements clause. 18 U.S.C. § 924(e)(2)(B)(i). That is, threatening physical force against the person of another is an *element* of any and all convictions under the crime-of-violence section of Georgia's terroristic-threats statute. A conviction under that portion of the statute—like Oliver's—therefore qualifies as a predicate offense triggering the ACCA's sentence enhancement.

## IV

I would hold that § 16-11-37(a) is divisible, Oliver was convicted under its crime-of-violence section, and such a conviction categorically qualifies as a "violent felony" under the ACCA's elements clause. The majority errs in coming to the opposite conclusion. I respectfully dissent.